UNITED STATES of America,
Plaintiff,

v.

RESERVE MINING COMPANY,
Defendant.

No. 5–72 Civ. 19.

United States District Court,
D. Minnesota,
Fifth Division.

June 15, 1972.

Edward T. Fride, Duluth, Minn., Robert J. Sheran, Robert G. Renner, U. S. Atty., Minneapolis, Minn., for plaintiff.

Edward T. Fride, Sullivan, Hanft, Hastings, Fride & O'Brien, Duluth, Minn., Robert J. Sheran, Lindquist & Vennum, Minneapolis, Minn., for defendant.

Keith M. Brownell, St. Louis County Atty., Duluth, Minn., Wayne G. Johnson, Johnson & Thomas, Silver Bay, Minn., Jerome Maslowski, and Francis J. Carrier, for Frank J. Kelley, Atty. Gen., Lansing, Mich., William R. Ojala, State Representative, James A. Rogers, Asst. Atty. Gen., Madison, Wis., Fred A. Cina, Village of Babbitt, Aurora, Minn., Mitchel H. Costley, Lake County Atty., Two Harbors, Minn., John M. Donovan,

Applequist, Nolan, Donovan, Larson, Barnes & Mathias, Duluth Area Chamber of Commerce, Duluth, Minn., Joseph B. Johnson, Reavill, Neimeyer, Johnson, Fredin & Killen, Duluth, Minn., Ronald W. Thomas, Silver Bay, Minn., Howard J. Vogel, Minneapolis, Minn., for intervenors.

## ORDER

MILES W. LORD, District Judge.

. The Court has before it some 15 motions for intervention in this lawsuit. There are 4 applications for intervention as plaintiffs by (1) the State of Wisconsin; (2) the State of Michigan; (3) the Minnesota Environmental Law Institute, Inc., Northern Environmental Council, and Save Lake Superior Association; and (4) the Michigan Student Environmental Confederation, Inc. There are 11 applications for intervention as defendants by (1) Lake County; (2) St. Louis County; (3) the Village of Babbitt; (4) the Village of Silver Bay; (5) the Village of Beaver Bay; (6) the Town of Beaver Bay; (7) the Lax Lake Property Owners Association; (8) the Northeastern Minnesota Development Association; (9) the Range Municipalities & Civic Association; (10) the Duluth Area Chamber of Commerce; and (11) the Silver Bay Chamber of Commerce.

The State of Wisconsin is seeking to intervene under Rule 24(b)(2), which sets out the requirements of permissive intervention. The State of Michigan is seeking to intervene both as a matter of right under Rule 24(a)(2) and permissively under Rule 24(b)(2). The environmental groups seek to intervene only as a matter of right under Rule 24(a)(2). The applicants seeking to intervene as defendants are moving for intervention under both Rule 24(a)(2) and (b)(2).

Rule 24(a)(2), Federal Rules of Civil Procedure, provides that:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Since there is no statute of the United States conferring an unconditional right to intervene on the applicants, the applicants seeking to intervene as of right must rely on part (2) of Rule 24(a). Before intervention as of right will be established under the rule, certain requirements must be met: first, the applicant must claim an interest relating to the property or transaction that is the subject of the action and second, the applicant must be situated such that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest. If these requirements are met, intervention will be established unless it can be shown that the applicant's interest is adequately represented by existing parties.

Rule 24(b)(2), Federal Rules of Civil Procedure, provides that:

Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercis-

ing its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The prerequisites to permissive intervention are, therefore, that the applicant's claim or defense have a common question of law or fact with the main action. Beyond this, allowance of intervention is within the discretion of the court, giving consideration to equitable principles of delay or prejudice of the case.

With the pertinent provisions of Rule 24 in mind, the Court will now consider the applications for intervention.

*I. Applications for Intervention as Defendants*

Because of the similarities in the proposed answers filed by these applicants, their motions for intervention will be considered together.

A. *The Applicants must claim an interest relating to the property or transaction which is the subject matter of the action*

The answers filed by the applicants indicate that they have various economic interests which are inextricably intertwined with the fate of Reserve Mining Company. To illustrate, according to the answers filed by the applicants, there are approximately 11,000 people in northeastern Minnesota who are employed either directly by Reserve Mining Company or indirectly by various area businesses and industries supporting Reserve Mining Company. Many of these people live in the villages of Silver Bay, Babbitt, Beaver Bay, and the town of Beaver Bay, and thus in St. Louis and Lake Counties. The individuals employed by Reserve Mining Company and supporting businesses and the families of those individuals are dependent upon these businesses for their livelihood. The local agencies of government are dependent upon both the individuals and Reserve Mining Company and supporting businesses for tax revenues necessary to maintain the efficient operation of local government. The other businesses are also dependent for their continued operation, in part, upon the continued operation of Reserve Mining Company. The disposition of this litigation could, therefore, have a substantial impact on local agencies of government in the area, individuals in the area, and industry and business in the area.

■ The question, as it appears to this Court, is whether the economic interest asserted by the applicants in their answers is a sufficient interest within the meaning of Rule 24(a)(2). This in turn depends on the construction to be given to Rule 24(a)(2). As stated by the United States Court of Appeals for the District of Columbia:

> We know of no concise yet comprehensive definition of what constitutes a litigable 'interest' for purposes of standing and intervention under Rule 24(a). One court has recently reverted to the narrow formulation that 'interest' means 'a specific legal or equitable interest in the chose'. Toles v. United States, 371 F.2d 784 (10th Cir. 1967). We think a more instructive approach is to let our construction be guided by the policies behind the 'interest' requirement. We know from the recent amendments to the civil rules that in the intervention area the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process . . .

Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694, 700 (1967).

■ Viewing the rule in this manner serves as an indication that the "interest" requirement of Rule 24(a)(2) should be viewed as a prerequisite to intervention, rather than a determinative criterion. Smuck v. Hobson, 132 U.S. App.D.C. 372, 408 F.2d 175, 197 (1969).

Beyond this, the "interest" requirement must be viewed in light of the type of case with which the Court is concerned, since Rule 24(a)(2), while designed to fit ordinary civil litigation, may "require other than literal application in atypical cases." Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694, 700 (1967).

In an action brought under the Federal Water Pollution Control Act, 33 U.S.C. § 1160(g)(1), to secure abatement of alleged pollution, the function of the Court is set forth in, in pertinent part, 33 U.S.C. § 1160(c)(5):

> In any suit brought under the provisions of this subsection the court shall receive in evidence a transcript of the proceedings of the conference and hearing provided for in this subsection, together with the recommendations of the conference and Hearing Board and the recommendations and standards promulgated by the Secretary, and such additional evidence, including that relating to the alleged violation of the standards, as it deems necessary to a complete review of the standards and to a determination of all other issues relating to the alleged violation. The court, giving due consideration to the practicability and to the physical and economic feasibility of complying with such standards, shall have jurisdiction to enter such judgment and orders enforcing such judgment as the public interest and the equities of the case may require.

This statute thus clarifies the Court's responsibility in an abatement action brought under subsections (g) and (c) of § 1160. First, if there are standards adopted pursuant to the conference procedure provided for in subsection (c)(2) of § 1160, and if there is a public hearing pursuant to (c)(4), a transcript of the conference proceedings and the hearing shall be received into evidence by the Court, as must any recommendations of the conference and hearing board.

The transcripts and recommendations would be given de novo consideration by the reviewing court. In addition, the Court may hear such other evidence as it deems proper, which makes discretionary the receipt of evidence beyond the transcript and recommendations of the conference and hearing board, so that the court may review all issues relating to the alleged violation.

Beyond this the Court, after giving due consideration to the practicability and to the physical and economic feasibility of requiring compliance with the water quality standards, shall have jurisdiction to enter such judgment as is required by the public interest and equities of the case.

■■ A court sitting in an abatement suit brought under subsections (g) and (c) of § 1160 must thus consider a multiplicity of factors in reaching any decision as to whether applicable water quality standards have been violated. The role of a court in such a situation, because of the nature of the proceedings and considerations which must be reviewed and undertaken pursuant to the statute, transcends ordinary civil litigation and makes a reviewing court more of an administrative tribunal than a court in an ordinary adversary civil case.

In such a case, where several factors must be weighed and considered before any final judgment is entered, and where there are several interests at stake, the court is of the opinion that the "interest" requirement in the context of this environmental case, should be viewed as an inclusionary rather than exclusionary device. In addition, because economic factors must be considered and because the Court would have discretion at trial to admit such evidence, this Court is of the opinion that the applicants' interests, within the purview of the Federal Water Pollution Control Act and Rule 24(a)(2), should be cognizable interests.

**B.** *Disposition of the action may, as a practical matter, impair or impede the ability of the intervenors to protect their interests*

Following the 1966 amendment to Rule 24(a)(2), it was no longer a requirement that an intervenor be bound by the judgment in a res judicata sense, as a prerequisite to intervention. Subsequent to the amendment the inquiry of the courts appears to have been directed toward the question of whether those interests and the ability of the applicants to protect those interests, will as a practical matter be impaired or impeded.

■ While any judgment entered against Reserve Mining Company would not be of res judicata effect as to the applicants, they would, as a practical matter, be foreclosed from asserting their claims or defenses if not allowed to do so in this action. Even assuming that another forum would be available in which these intervenors could protect their interests, that factor would not be dispositive. It would, perhaps, be possible for certain of the intervenors to bring subsequent lawsuits, but such hypothecation in no way guarantees an alternative forum for the intervenors. It seems clear to this Court, then, that as a practical matter the ability of the intervenors to protect their substantial economic interests would be seriously impaired or impeded if they were not allowed to intervene in this lawsuit.

**C.** *Inadequacy of Representation*

Because the first two requisites for intervention as of right have been met, intervention of right will be established unless it is shown that the interests of the applicants are being represented adequately by existing parties.

In determining whether the interests of the applicants would be adequately represented by existing parties, the Court in Nuesse v. Camp, 128 U.S.App. D.C. 172, 384 F.2d 694 (1967), in considering whether a state banking Commission should be allowed to participate in a suit involving the Comptroller of the Currency, stated that:

Little guidance for the present case is furnished by the discussion in the pre-amendment cases which focused on such indicia of inadequacy as collusion between the parties, a conflict in position urged, or an indication that the alleged representative would fail in his duty to prosecute the action diligently. These factors have their most common and appropriate application in class actions, where the applicant's interest is identical to that of an existing party. Even under the amended rule the mere fact that there is a slight difference in interests between the applicant and the supposed representative does not necessarily show inadequacy, if they both seek the same outcome. "Interests may be different without being adverse." . . . However, interests need not be wholly "adverse" before there is a basis for concluding that existing representation of a "different" interest may be inadequate.

385 F.2d at 702–703.

■ In addition, it need not be shown positively that representation will be inadequate. It is sufficient if it is shown that it may be inadequate. Kozak v. Wells, 278 F.2d 104, 110 (8th Cir. 1960). As stated by the court in Ford Motor Co. v. Bisanz Bros. Inc., 249 F.2d 22 (8th Cir. 1957):

While there is justification for a belief that the Railroad will, at a trial of this case on the merits, adequately present to the trial court all of the evidence and all of the applicable law necessary to enable the court to consider and decide the issues raised by the pleadings, including the proposed answer of the Ford Motor Company, it cannot be said with certainty that this will be so, and the Company insists that it will not be so and that it has a special interest that the Railroad does not represent.

249 F.2d at 27–28.

■ The Court is of the opinion that there are substantial similarities between the *Bisanz* case and the instant case. While Reserve Mining Company would undoubtedly, put into evidence at trial the economic conditions of the northeastern Minnesota region, the Court feels that there is a substantial difference between arguments put forth by a corporation which may be only tangentially interested in those economic results, and arguments put forth by those who will be directly affected by whatever happens to Reserve Mining as a result of this litigation.

Reserve Mining has in this case as its primary concern, presumably, its ability to maintain its current operations with a certain profit margin. Any adverse determination by the Court could have substantial effects on the internal economies of Reserve, with additional effects on the economy of the entire northeastern Minnesota area. These effects upon the proposed intervenors would be a direct result of whatever action, if any, is taken against Reserve. The Court feels, however, that there should be a distinction drawn between what would seem to be the primary concerns of Reserve Mining and the parties seeking to intervene. Reserve is interested in the outcome because of the possible consequences relating to its ability to maintain its current level of operations at a desirable or feasible profit margin. The parties seeking to intervene are concerned with the entire economy of the area as it would be affected by whatever action Reserve might be forced to take as a result of any judgment entered by this Court.

While these interests are not adverse, the interests may be diverse. In reaching this conclusion, the factors of direct and indirect injury may provide the necessary guideline to make a decision concerning the adequacy of representation.

The injury to which Reserve would be subjected if required to take corrective action would be, in relation to Reserve, direct. The injury to the applicants would be, however, of an indirect nature, stemming from the effect, if any, on the internal operations of Reserve. The nature of the injury which the applicants would stand to suffer, as opposed to the injury to Reserve, is thus of a different nature, even though it is similar or would arise from the same litigation. Application of this test leads this Court to the conclusion that it is possible that there would be a possibility of inadequate representation. This is all that is necessary to satisfy the "adequacy of representation" requirement of Rule 24(a)(2).

■ In relationship to the towns, villages, and counties which seek to intervene, there may be a conceptual problem arising out of the legitimacy of their representation of those people within their boundaries. These political entities represent all individuals within their boundaries to whom the entities are responsible for the furnishing of various governmental services. The conceptual problem arises when the interest is viewed which the United States is seeking to represent and advance. According to the complaint of the United States, Reserve Mining Company has violated the Federal Water Pollution Control Act, 33 U.S.C. § 1160. The alleged violation consists of an allegation, in part, that certain state water quality standards adopted by the State of Minnesota, with federal approval, were violated. Allowing the local agencies of government to intervene as defendants may, as a result, be a contradiction in terms. If the power of municipal corporations is viewed in terms of their legislative power, for example, it can be seen that they are without power to adopt legislation or pass ordinances in violation of a stated state policy or statute to the contrary. If the water quality standards which the Government is attempting to enforce in this action is viewed as a state policy, allowing the municipal corporations to intervene here

as defendants would be to allow them to controvert that stated policy.

The Court is of the opinion that in this situation this does not present a substantial problem. In the first place, the State of Minnesota is not a party to this lawsuit. It would thus seem justifiable for the local agencies of government which are directly interested here to intervene as representatives of the individuals within their boundaries. Second, it cannot be presumed that these agencies of government have interests adverse to those of the state. While they are intervening as defendants in this case, they are attempting primarily to protect their economic interests in this lawsuit. If the State were a party it would be presumed that they would do the same. As mentioned previously, while this case may appear to be a strictly adversary proceeding, the fact that there is a statutory mandate requiring the Court to take into consideration various factors, including the economic feasibility of any judgment, makes it imperative for the Court to obtain the fullest possible factual understanding of the conditions in northeastern Minnesota before rendering any judgment. In a sense, then, the parties are advisers of the Court, as in an administrative proceeding, as well as litigants. The Court will thus not be bound by the traditional concepts of adversariness in viewing the right to local governmental agencies to intervene in this lawsuit.

The Court is of the opinion that the requirements of Rule 24(a)(2) have been met, so that the applicants' motions to intervene as defendants are granted.

II. *Applications for Intervention as Plaintiffs*

A. *The States*

1. *The State of Wisconsin*

 The State of Wisconsin seeks permissive intervention in this action, pursuant to Rule 24(b)(2). The basis of Wisconsin's proposed complaint is that the suit is brought "in its capacity as *parens patriae* to prevent harm to its quasi-sovereign interests, as trustee over the waters of Lake Superior within her boundaries . . . ." The basic allegations in the complaint are that the discharge of Reserve Mining into Lake Superior has resulted in a deterioration in the quality of Lake Superior, which impedes the enjoyment and use of Lake Superior by the people of the State of Wisconsin and constitutes a public nuisance.

It is clear that the claim of the State of Wisconsin does have a question of fact in common with the main action, since the actions complained of by the United States are the same actions which the State of Wisconsin claims has resulted in a public nuisance. Additionally, there is a question of law in common, in that the United States has amended its complaint to include an additional count alleging nuisance violations. It is equally clear that there are independent jurisdictional grounds to support the claim of the State of Wisconsin. Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

Because of the substantial interest of the State of Wisconsin in the subject matter of this lawsuit this Court is in favor of exercising its discretion to permit intervention by the State of Wisconsin.

2. *The State of Michigan*

The State of Michigan seeks to intervene, both permissively under Rule 24(b)(2) and as of right, under Rule 24(a)(2). The proposed complaint of the State of Michigan alleges violations by Reserve of Minnesota WPC Regulation 15(a)(4), (c)(2); the Federal Water Pollution Control Act, 33 U.S.C. § 1160(c)(5); and the Water Refuse Act of 1899, 33 U.S.C. § 407.

 From the proposed complaint filed by the State of Michigan it is quite clear to this Court that Michigan does

have a substantial interest relating to the subject of this action. In its capacity as *parens patriae* the State of Michigan is charged with representation of its citizens' interests in Lake Superior, whether the interests be recreational, aesthetic, or property interests. Second, Michigan's ability to protect those interests may be impeded or impaired if she is not allowed to intervene in this lawsuit. While Michigan presumably would have an alternative forum in which to prosecute its cause of action, the possibility of a binding judgment by this Court as well as the possibility of inconsistent or excessive litigation should, as a practical matter, be considered in determining whether intervention should be allowed. Because there would be the possibility of such inconsistent litigation, even presuming the availability of an alternative forum for Michigan, the second criterion for intervention has been met. Intervention as of right will thus be granted unless it can be shown that the representation of Michigan's interests by existing parties is adequate. In this situation the Court is of the opinion that such representation *may* be inadequate, which is all that is required under Rule 24(a)(2). Michigan is representing certain interests of her citizens, which are being substantially effected by Reserve Mining's discharge into Lake Superior. While the United States in prosecuting the action may introduce into evidence the harmful effects of Reserve's discharge on the State of Michigan, this representation could, perhaps, be better undertaken by the direct representative of the people of Michigan. In such a case, where the State of Michigan seeks to intervene in her capacity as *parens patriae,* in a lawsuit where state interests are made an integral part of federal policy, and subject to enforcement by federal action, it is appropriate that the State be allowed to represent the interests which it obviously has in the lawsuit. It is thus the Court's opinion that the interests which the State of Michi-

gan has in the subject matter of this lawsuit may not be adequately represented by existing parties. The State of Michigan is therefore entitled to intervention as of right under Rule 24(a)(2).

This Court is also of the opinion that the State of Michigan would be entitled to permissive intervention under Rule 24(b)(2). As was the case with Wisconsin, there are common questions of law and fact in Michigan's proposed complaint and the main action. In addition, there are independent jurisdictional grounds which would support an independent lawsuit by the State of Michigan. Illinois v. City of Milwaukee, (1972) 406 U.S. 91, 92 S.Ct. 1385, 31 L. Ed.2d 712; Texas v. Pankey, 441 F.2d 236 (10th Cir. 1971).

B. *The Environmental Groups*

1. *Minnesota Environmental Law Institute, Inc., Northern Environmental Council, and Save Lake Superior Association*

In the applicants' memorandum in support of their motion for intervention it is stated that the Minnesota Environmental Law Institute, Inc., is a non-profit corporation whose members are Minnesota residents, and that members of the Institute use Lake Superior as an esthetic, recreational, and conservational resource, and have an interest in protecting the Lake from pollution by Reserve Mining, and in representing the public interest in the protection and enhancement of the environment.

The memorandum states that the Northern Environmental Council is a non-profit corporation which is a confederation of 44 environmental organizations in Minnesota, Wisconsin, and Michigan as well as North Dakota, South Dakota, and Indiana. Members of these organizations are persons who own property adjoining Lake Superior, persons who have an interest in the protection of the Lake as an esthetic, recreational and conservational resource.

The analysis applicable to the applications for intervention as defendants in large part applies to the applications for intervention by the environmental groups. The right of the environmental groups must be viewed, as were the applications of the defendant-intervenors, in light of the interest which they seek to represent as well as in light of the nature of this particular litigation.

■ It appears from the moving papers of these environmental groups that they seek to represent an exceedingly broad interest, while asserting a specific method which they believe will protect that interest. The Court's attention must be directed, therefore, to the interest asserted by the environmental groups, rather than the method asserted in protection of that interest. The interest is not an interest in on-land disposal of taconite tailings, but rather an interest of specific property owners and an interest of the members of these organizations in Lake Superior as a source of drinking water, recreation, and conservation. This is, within the context of this lawsuit, a substantial interest. Viewing this interest in light of the litigation with which the Court is faced, which is, as stated, very much akin to an administrative proceeding, leads the Court to the conclusion that a representation of those interests would be helpful to any decision reached by this Court.

The Court is thus of the opinion that, considering the type of interest asserted by the environmental groups, and the type of proceedings before the Court, the interests asserted by the environmental groups are sufficient to justify intervention as of right under Rule 24(a)(2), provided the other requirements of the rule are met.

The second requirement for intervention under Rule 24(a)(2) is that the ability of the applicants to protect their interests may, as a practical matter, be impaired or impeded if they are not allowed to intervene. Any judgment entered by this Court, whether maintaining the status quo or forcing Reserve Mining Company to take corrective action, would be of binding force, and would leave the applicants without apparent judicial recourse to assert their claimed interests. As stated in regard to the applications for intervention as defendants, however, the availability of an alternative forum is not necessarily controlling. It should be sufficient to say that the ability of these applicants to represent their interests in the face of a final judgment by the Court or a settlement of this case, would be substantially impaired or impeded.

■ Since the first two requirements of Rule 24(a)(2) have been satisfied, intervention of right will be established unless it is shown that the interests of the environmental groups will be adequately represented by existing parties to the lawsuit. It is true that the environmental groups represent only a portion of Minnesota citizens interested in this lawsuit, but it is also true that the State of Minnesota is not a party to this lawsuit. This raises the possibility that the interests of the citizens of Minnesota who are represented by the environmental groups would be inadequately represented by the United States. While there may be a similarity of interests asserted between the environmental groups and the United States, the similarity does not necessarily mean that there will be adequate representation of those interests by the United States. Assuming that the end result which the United States is seeking is an abatement of pollution of Lake Superior by Reserve Mining Company, the Court must assume that there is more than one method of achieving that abatement. If the environmental groups maintain an interest in a specific form of abatement, which they feel will better protect their asserted interests, the Court should be willing to hear such evidence, if the best possible judgment is to be rendered. It must be remembered that this litigation is narrowly confined to one particular discharge, by one particular company,

and that additional evidence as to alternative methods of abatement, in the event pollution should be proved, will be in the light of the alleged injury of minimal cost and inconvenience to the parties to the lawsuit, but will necessarily lead to a more informed decision by this Court on the merits of the controversy.

In addition, there may be a difference in approach between the environmental groups and the United States. The United States is charged with representing a broad public interest, and, as the Government of the people, must represent varying interest, industry as well as individuals. The Court should at least hear and make of record the views of those groups seeking to represent a more narrow interest.

 The environmentalists have already been critical of the Government's failure to pray for the specific relief consisting of on-land disposal of taconite tailings. Were the Court to foreclose this line of inquiry it would leave a substantial portion of the populace and specifically the parties who are most interested, without a forum in which to assert their views. The breadth of 33 U.S.C. § 1160 should, in this Court's opinion, encompass this situation. Because of this factor, this Court is of the opinion that the representation of the interests of the environmental applicants seek to represent might be inadequately represented by existing parties to this lawsuit. To decide the question adversely to these applicants would be in effect rendering summary judgment without any factual record when factual determinations are at the heart of the problem of intervention. In a situation such as this, where of necessity there is some speculation on the part of the Court, a court must be guided by the posture of the parties and their contentions. To the extent that representation is adequate the nature and extent of the participation by the intervenors may be regulated by suitable pretrial and intrial orders.

While the Court here decides that the applicants herein allowed to intervene will come "up to bat" nevertheless the number of "strikes" they will be allowed by way of introducing evidence are matters that can best be answered at a later time. Much will depend upon the actual state of the record during the trial. It is then that the Court can finally determine whether or not it would benefit by further elucidation of a particular point of view of any of the intervenors. The Court will expect and require that its orders curtailing presentations will avoid repetition.

This procedure also points out the genuine possibility that the various parties will work in unison to avoid duplication of discovery efforts and act toward an orderly and expeditious presentation of those evidentiary matters which they have in common.

2. *Michigan Student Environmental Confederation, Inc.*

The Michigan Student Environmental Confederation, Inc., is a confederation of 130 environmental groups which represent citizens throughout the State of Michigan. Some of the members have economic and property interest relating to Lake Superior and some of the members receive their drinking water from Lake Superior. All of the members seek to represent the interest of the public in preserving and enhancing Lake Superior as an esthetic, conservational, and recreational resource.

If allowed to intervene this association would adopt the proposed complaint of the other three environmental organizations.

The interests which this group seeks to represent are the same interests advanced by the other three environmental groups, and the Court's prior analysis would be equally applicable to the Michigan environmental group. The only additional question, however, concerns whether the interests of the citizens of Michigan are adequately represented by the presence of the State in its capacity

as *parens patriae*. This Court's analysis of the adequacy of representation question with respect to the other three environmental groups, concerning whether their interests would be adequately represented by the United States, could be equally applicable to the representation of the interests of the Michigan environmental groups by the State of Michigan. In representing diverse interests, the State of Michigan may give inadequate representation to the narrow interests asserted by the Michigan Student Environmental Confederation. The fact that representation *may* be inadequate is all that is required under Rule 24(a)(2).

By way of comment, it should be noted that the Court does not consider this to be a usurpation of the duties of the State of Michigan in its capacity as *parens patriae*, but rather a supplementation of those duties by narrow representation of specific interests. Conceptually, there should be no problem in allowing the assertion of these narrow interests in the context of this particular litigation.

The motion of the Michigan Student Environmental Confederation, Inc. to intervene is therefore established as a matter of right.

II. *Summary*

In summary, the motions of all applicants for intervention in this lawsuit are granted.

In addition, to avoid unnecessary complications in the conduct of this lawsuit, the Court makes the following orders:

(1) The defendants and plaintiffs will each name a spokesman who will act as their representative during all pre-trial proceedings in this Court.

(2) For discovery purposes, each side will work in union to prevent duplication of effort and unnecessary complication.

(3) The right of the parties to bring motions is not susceptible of restriction by the Court, but in all motions which the parties agree should be brought there will be a uniform presentation of such motions.

(4) The number of witnesses and types of witnesses to be called should be agreed upon, insofar as possible, by the parties, prior to trial, subject to further order of this Court.

(5) The type of evidence to be presented should, insofar as possible, be agreed upon by the parties on each side to prevent repetition.

(6) The order of production of witnesses and evidence should also be subject to agreement by the parties on each side.

(7) The United States Government and attorneys for Reserve shall act as liaison counsel and shall insofar as possible outline the basic strategy and presentation of arguments and evidence pending further refinement of procedures herein outlined.