## ENVIRONMENTAL DEFENSE FUND, INC., Plaintiff,

v.

## Douglas M. COSTLE et al., Defendants.

### Civ. A. No. 77–1436.

United States District Court, District of Columbia.

April 20, 1978.

---

---

It is against this background that the present motions to intervene must be judged. Four motions to intervene are currently pending before this court. The first motion was filed by a group of state and municipal public entities from the state of Colorado. For the purposes of convenience, these entities shall be referred to as Intervention Group I. The second motion was filed by the Metropolitan Water District of Southern California. The third motion was filed by the Utah Power and Light Co., a utilities company. The fourth motion was filed by a group of organizations representing a variety of interests in the Basin area, and shall be referred to as Intervention Group II. Although there is some overlapping of the issues presented by each of these motions, each motion shall be analyzed separately so that any distinct interests represented by the intervenors will be accorded full consideration.

Each of these entities seeks intervention as of right, or in the alternative permissive intervention. The request for intervention as of right shall be discussed first.

## I. *Intervention as of Right.*

Intervention as of right is governed by Federal Rule of Civil Procedure 24(a), and particularly in this case by subdivision (a)(2), which states:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

It is undisputed that all of the proposed intervenors in this case have at least a minimal interest in the regulations governing the salinity levels in the Colorado River since they all depend on the River, to one extent or another, for water or economic use. Therefore, the issues before the court are whether the proposed intervenors' interests will be practically impaired by the disposition of this case, and whether the present parties adequately represent the proposed intervenors' interests.

## A. *Intervention Group I*

As indicated earlier, the seven entities in this group are all state or municipal public entities from the state of Colorado. The Colorado River Water Conservation District is an agency of the state of Colorado charged with preserving the waters allocated to Colorado pursuant to the interstate Colorado River Compact. It is the principal water policy agent of the state regarding the headwaters of the Colorado River. The second member of this group is the Southwestern Water Conservation District, which is another state agency which is charged with oversight of the tributaries of the Colorado River in the southern part of the state. The third member is the Northern Colorado Water Conservancy District, a state agency which contracts with the U.S. Bureau of Reclamation for the repayment of facilities constructed by the U.S. in the Colorado-Big Thompson Federal Reclamation Project. The fourth member is the city of Colorado Springs, Colorado. The fifth member is the city of Aurora, Colorado. The sixth member is the Board of Water Works of the City of Pueblo, Colorado. The seventh member is the city and county of Denver, which appears through its Water Commission. The first three members are all state agencies which deal with water supply in one form or another. The last four are municipal corporations or the agencies thereof which seek to secure the water supplies for their populations.

■ 1. *Practical Impairment of Interest.* The entities in Group I indicate that they feel that in light of their dependence on the Colorado River as a source of water and of income, denial of their motion to intervene in this suit will practically impair or impede their efforts to protect their rights to use of the River. The plaintiff and the Federal defendants dispute these contentions. They point out that if this court were to invalidate these regulations,

then EPA would have to engage in rulemaking, during which the proposed intervenors could once again act to protect their positions. Further, the plaintiff and the federal defendants state that this case will have no stare decisis effect on the proposed intervenors in the context of this dispute. The plaintiff and the federal defendants view this case as only a possible first step in a process. If the regulations are upheld, the proposed intervenors retain their present water rights. If the regulations are overturned, the proposed intervenors suffer no immediate deprivation since the entire rulemaking process must begin over again.

Despite the apparent logic in the position advanced by the plaintiff and the federal defendants in regard to this requirement for intervention as of right, their position does not appear to comport with the law. In *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 183 U.S.App.D.C. 11 (1977), the court stated that, "[I]t is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation." *Id.* 183 U.S.App.D.C. at 17, 561 F.2d at 910. The *N. R. D. C.* case involved a situation in which this district court was closely involved in monitoring the implementation of a settlement agreement. The court's role in the present case is much more limited, and to that extent the *N. R. D. C.* suit is distinguishable. However, the circuit court indicated that factors of convenience are especially relevant in cases of administrative review. *Id.* Since this case would seem to fall into that mold and assuming *arguendo* that the proposed intervenors have an interest distinct from those already represented in this case, intervention should not be denied solely on the grounds that those interests would not be impaired by an adverse disposition of this suit.

2. *Adequacy of Representation.* The more crucial question in this context therefore becomes whether the entities already in this suit will adequately represent the interests advanced by the proposed intervenors. The determination of this issue is complicated in this case by the presence of the seven Basin states as intervenor—defendants. As such, this court must determine whether the EDF, the federal defendants and, in this case, the state of Colorado adequately represent the interests advanced by the entities in Group I.

■ In order to shoulder the burden of proving inadequacy of representation under Rule 24(a)(2), the proposed intervenors need only show that the representation of their interests by the other parties may be inadequate, and this burden is a minimal one. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). The proposed intervenors contend that their interests, although not necessarily antagonistic to those of the state of Colorado, are sufficiently different and particularized to warrant a finding of inadequacy of representation. The plaintiff and the federal defendants argue that since the proposed intervenors in Group I are all state or municipal subdivisions of the state of Colorado, then the presence of the state in this case indicates that the interests of the proposed intervenors are adequately represented.

In asserting their case in support of intervention, the proposed intervenors place primary reliance on three cases: *N. R. D. C. v. Costle, supra; United States v. Reserve Mining Co.*, 56 F.R.D. 408 (D.Minn.1972); and *New York P. I. R. G., Inc. v. Regents of Univ. of State of New York*, 516 F.2d 350 (2d Cir. 1975) [hereinafter cited as *P. I. R. G. v. Regents*]. However, all three of these cases are fundamentally inapplicable to the case at hand.

In *N. R. D. C. v. Costle, supra*, the government and several industrial groups had entered a settlement agreement whereby the EPA would promulgate certain sets of regulations pursuant to the Federal Water Pollution Control Act, *supra*. Only the participants in the settlement agreement would have input into the rulemaking proceedings and in the implementation and oversight proceedings in the district court. This court denied intervention to several

other industrial groups on the theory that the EPA would adequately represent the interest that all regulations should be lawful, and the other industrial participants would assure that industries' point of view was presented. The circuit court reversed, stating that the additional industrial groups had an interest in the actual content of the regulations, not just in their legality. Furthermore, the circuit court indicated that since a variety of effluents was to be regulated, the various producers of these effluents should be heard. 183 U.S.App.D.C. at 19, 561 F.2d at 912. In the present case, the court is not so intimately involved. This court's task is simply to rule on the validity of regulations already promulgated. If those regulations are found wanting, the statute provides that EPA, not this court, shall engage in *de novo* rulemaking. Furthermore, no action by this court in this case will limit the access of any of these proposed intervenors to any further rulemaking.

Whereas a settlement agreement expanded the court's function in the *N. R. D. C.* case, the court in *United States v. Reserve Mining Co.*, found its role expanded by statute. Because the suit in that case was an abatement action brought by the United States to end the depositing of taconite into Lake Superior, the court determined that the Federal Water Pollution Control Act, 33 U.S.C. § 1160(c)(5), required it to weigh a variety of interests in determining whether the regulation had been violated and if compliance were feasible. 56 F.R.D. at 413. The court indicated that:

> The role of a court in such a situation, because of the nature of the proceedings and considerations which must be reviewed and undertaken pursuant to the statute, transcends ordinary civil litigation and makes a reviewing court more of an administrative tribunal than a court in an ordinary adversary civil case.

*Id.* The court noted that in such an atypical civil litigation, the interest requirement in an environmental matter should be inclusive, not exclusive. *Id.* In view of this expanded role, the court in *Reserve Mining* allowed wide intervention. Specifically im-

portant in the view of the proposed intervenors in this case is the fact that the court allowed several towns, villages and counties of the state of Minnesota to intervene. The court noted explicitly that the state of Minnesota itself was not a party to this proceeding, although it was Minnesota's regulation that was at issue. The court further noted that if Minnesota had intervened, allowing the local entities to intervene in this matter would create the conceptual problem of allowing the local entities to oppose state environmental policy which they would normally be without power to contravene. *Id.* at 415–16. However, the court noted that under the circumstances it would treat the local entities as the court's advisors regarding the economic impact of any proposed regulation. *Id.* at 416. It is clear that the present case is much more in the nature of ordinary civil litigation. This is not an abatement action, and the court may not engage in any weighing of interests. This court is interested in the contents of the regulations at issue in this case only insofar as they indicate whether the Secretary has met his statutory duty in approving their adoption. The court in *Reserve Mining* took great pains to indicate the exceptional nature of the case before it as a means of justifying its wide-ranging grant of intervention. Absent such extreme circumstances, this court must be more circumspect in allowing intervention.

The final case upon which the proposed intervenors in Group I principally rely is *P. I. R. G. v. Regents, supra.* In that case, a public interest group attacked a New York State regulation governing pricing policies in pharmacies. An association of pharmacists sought to intervene so as to represent their economic interests in the matter. The court held that while the question of adequacy of representation was a close one, there was a substantial likelihood that the pharmacists would represent their own economic interests more vigorously than would the state, especially in light of the state's admission that its interests might be adverse to those of the pharmacists. 516 F.2d at 352. It should be noted that the entities

in Group I are not private groups seeking to maximize profits, but they are all public entities which, in one way or another, are bound closely by state regulation. It is this nature of the governmental relationship between the state of Colorado and the proposed intervenors in Group I which forms the crux of the argument advanced by the parties opposing the intervention motion.

■ In opposing the motion of Group I for intervention, the plaintiff and the federal defendants urge this court to accept the doctrine of *parens patriae* as presented by the Supreme Court in *State of New Jersey v. State of New York*, 345 U.S. 369, 73 S.Ct. 689, 97 L.Ed. 1081 (1953). In that case, the state of New York, upon petition of New York City, planned to divert the waters of the Delaware River for drinking water purposes. The state of New Jersey brought an original action in the Supreme Court to enjoin the diversion, and forcibly joined New York City as an indispensable party defendant. The state of Pennsylvania was also allowed to intervene as a user of the Delaware River waters, and the case proceeded to judgment before a special master who devised a plan for the use of the waters. Some years later, the city of New York petitioned to reopen the case so as to modify the plan and increase its share of the water supply. Upon reopening, the City of Philadelphia petitioned to intervene on the grounds that it too relied on the river for water. In rejecting the petition to intervene, the Supreme Court relied on the doctrine of *parens patriae* :

> The "parens patriae" doctrine . . . is a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, "must be deemed to represent all its citizens." *Com. of Kentucky v. State of Indiana*, 1930, 281 U.S. 163, 173–174, 50 S.Ct. 275, 277, 74 L.Ed. 784. The principle is a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration. Otherwise, a state might be judicially impeached on matters of policy by its own subjects and there would be no practical limitation on

the number of citizens, as such, who would be entitled to be made parties. *Id.* at 372–373, 73 S.Ct. at 691. After cataloging the problems which would ensue if the Court became involved in "an intramural dispute over the distribution of water within the Commonwealth," *id.* at 373, 73 S.Ct. at 691, the Court stated:

> An intervenor whose state is already a party should have the burden of showing some compelling interest in his own right, apart from his interest in a class with all other citizens and creatures of the state, which interest is not properly represented by the state.

*Id.*

Although the Supreme Court made this analysis of the *parens patriae* doctrine within the context of its original jurisdiction, the doctrine is not limited to that situation. The Third Circuit advanced a similar analysis in *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501 (3d Cir. 1976), and stated:

> [A] presumption of adequate representation generally arises when the representative [of a proposed intervenor's interest] is a governmental body or officer charged by law with representing the interests of the absentee. . . . Where official policies or practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers.

*Id.* at 505. All of the entities in Group I are state agencies or offices, or municipalities within the state of Colorado. None has offered any compelling reason or circumstance in which it validly differs with the position taken by the state of Colorado. The formulation of these salinity control standards was expressly left to the states of the Colorado River Basin. The various public subdivisions which here seek to intervene do not allege that the states or the federal government acted illegally in promulgating these regulations. The issues of the allocation of the water levels approved, or the implementation of these regulations are not before this court. As such, the interests

advanced by these proposed intervenors in upholding the validity of these previously promulgated regulations would appear to be identical with those interests advanced by the states. Since the states adequately represent the interests of these entities, intervention as of right is denied.

### B. *Metropolitan Water District of Southern California*

■ The second motion to intervene was filed by the Metropolitan Water District of Southern California. By its own admission, this proposed intervenor is a public corporation created by the Metropolitan Water District Act of California, with its primary functions being to develop, store and deliver water to approximately 27 other public agencies, which in turn distribute the water to approximately half of the population of the state. The reasons in support of this motion are similar to those advanced by the entities in Group I, *supra*. Since the Metropolitan Water District is a creature of the state of California, and since the state of California has already intervened in this action, the Metropolitan Water District's motion to intervene as of right is denied for the same reasons as were advanced regarding Group I, *supra*.

### C. *Utah Power and Light Co.*

■ Utah Power and Light Co. (hereinafter U.P.&L.), a utility company which supplies a large portion of the total electricity used in the states of Utah and Wyoming, filed the third motion to intervene. U.P.&L. holds several water use permits and water storage licenses in connection with its hydroelectric generating plant on the Colorado River. U.P.&L. indicates that if it is not permitted to intervene, it will be unable to protect its interests in these permits and licenses.

Granting that U.P.&L. has an interest in this matter, it appears that, in a general sense, denial of this motion may impair U.P.&L.'s ability to protect that interest. This suit is not simply seeking a review of administrative action. It is a citizen's suit brought pursuant to 33 U.S.C. § 1365(a) to compel the Administrator to do some non-discretionary act. Such a suit may be brought by "any citizen", and section 1365(g) defines the term "citizen" as "a person or persons having an interest which is or may be adversely affected." Although the right to intervene in an enforcement action has been limited, 33 U.S.C. § 1365(b), *see Stream Pollution Control Bd. of Indiana v. U. S. Steel Corp.*, 512 F.2d 1036, 1041 (7th Cir. 1975), no limitation has been created for citizen suits. Therefore, it seems sufficient, as far as the impairment of interest requirement, that there is a possibility that if this court invalidates these regulations, the ensuing rulemaking may result in a curtailment of U.P.&L.'s water use and storage rights.

The court must, therefore, determine once again whether the parties already present in this suit adequately represent the interests of the moving entity. The states of Utah and Wyoming represented to the court in their motions to intervene that they could protect the interests shared by their citizenries in water quality control, water resource planning and allocation, and the various forms of economic development dependent on the river. U.P.&L. admits that it does not disagree with the positions taken by any of the other defendants in this matter, but rather states that inadequacy of representation results since its interest is more specific than those represented by the states and federal defendants.

Although the standard for determining inadequacy of representation is lenient, the moving party still bears the burden of showing that representation may be inadequate. *Trbovich v. United Mine Workers, supra.* Also, though it is true that in some cases the existence in the moving party of a more narrow interest than those represented by the current parties may justify intervention, the cases so holding primarily involve situations in which the court must perform a quasi-administrative function, *N. R. D. C. v. Castle, supra; United States v. Reserve Mining Co., supra;* or where the interests of the governmental representative of individual claims are actually adverse to those claims. *State of New Mexico*

*v. Aamodt*, 537 F.2d 1102 (10th Cir. 1976) (Navajo Indians permitted to intervene in water rights suit despite U.S. duty to represent them since U.S. interest in the suit was adverse to Indian water claims); or where the provision in question specifically deals with an area of economic regulation which the state admittedly could not adequately represent, *P. I. R. G. v. Regents, supra.* The present case involves none of these situations. This case deals only with the adequacy of the salinity standards promulgated by the states and whether the Administrator fulfilled his statutory duty in approving these plans. As such, the parties are limited to arguing for or against the validity of these regulations. Individual interests such as those U.P.&L. seeks to advance are largely irrelevant. U.P.&L.'s arguments directed at the subject matter of this case will be cumulative of the arguments advanced by the other defendants. Therefore, this court is of the opinion that U.P.&L. is adequately represented in this case, and the motion to intervene as of right is accordingly denied.

### D.  *Intervention Group II*

■ The final motion to intervene was filed by a group of four diverse entities from a variety of the Basin states. The Mountain States Legal Foundation is a non-profit public interest law center which states that it seeks to intervene on behalf of its directors, officers, supporters and other individuals who rely on the water of the Colorado River for consumptive uses. The National Water Resources Association represents the water users of 18 Western States. Some of its members rely on the Colorado River for irrigation and municipal water supplies. The Colorado Water Congress represents 1,800 individual water users within the state of Colorado, most of whom are either municipalities or industries. Finally, the Yuma Auxiliary Project is an irrigation district in southern Arizona which contracts with the United States for the use of the Colorado River waters for irrigation. These four groups seek jointly to protect their members' interests in maintaining their consumption rights to the Col-

orado River waters as presently allocated under the existing interstate water compacts among the Basin states.

Because of the flexible standards applied to the determination of whether a proposed intervenor has an interest in a case at all, it would be difficult to say that these four intervenors do not possess such an interest, since all of them represent people and corporations which use the Colorado River water in one way or another. Similarly, because the end product of this suit might be that new, more restrictive regulations may be made, it is difficult to say that the proposed intervenors will not be practically impeded in the defense of their interests if intervention is denied. However, the interests expressed by the intervenors in Group II are so general that it must, as a matter of law, be stated that the states adequately represent those interests. There is no evidence of any disagreement between the states and the intervenors in this group. The interests advanced are shared by all the citizens of the Basin states and therefore the representation of those general, non-adverse interests should be left to the states under the doctrine of *parens patriae* as outlined above. If such were not the case, there would be no limit to the intervention as of right which might occur. Therefore, because the entities in Group II represent general interests shared by the entire populations of the intervening states, intervention as of right should be denied. *See Stream Pollution Control Board of State of Indiana v. U. S. Steel Corp.*, 62 F.R.D. 31, 35 (N.D.Ind.1974), *aff'd* 512 F.2d 1036 (7th Cir. 1975) (individual intervention into suit to abate whether pollution denied where proposed intervenor's only interest in suit was same as that of the general public).

### II.  *Permissive Intervention.*

■■ All of the entities moving for intervention as of right have also moved in the alternative for permissive intervention. Under Federal Rule of Civil Procedure 24(b), the court may permit intervention when the applicant's claim or defense has a common issue of law or fact with the main

action, and where the court in the exercise of its sound discretion determines that the intervention will not unduly delay or prejudice the adjudication of the case of the original parties. A motion for permissive intervention is addressed to the court's discretion, and the court's action on such a motion will not be reversed unless the court abused its discretion. *Brewer v. Republic Corp.*, 513 F.2d 1222 (6th Cir. 1975); *Garrett v. United States*, 511 F.2d 1037 (9th Cir. 1975).

██ Regarding the entities in Intervention Group I, and the Metropolitan Water District of Southern California, the doctrine of *parens patriae* indicates that it may be prejudicial to the states which have already intervened in this suit to allow the various political subdivisions of the states the opportunity to question state policy which the entities might not otherwise have. Since as a matter of law these entities are represented by the states, any evidence they offer will be merely cumulative, and in that respect an unwarranted delay will occur. Therefore, this court will, in the exercise of its discretion, deny permissive intervention to the entities in Group I and to the Metropolitan Water District of Southern California.

The situation presented by Utah Power and Light is analogous. U.P.&L. has indicated no way in which it will supplement the position already taken by the other parties. The views U.P.&L. has indicated that it will express are unlikely to be helpful to this court in the resolution of this matter. *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391 (N.D.Ill.1976). Therefore, this court should in the exercise of its discretion deny permissive intervention to Utah Power and Light.

██ The entities in Intervention Group II present a somewhat different situation. These entities have indicated that regardless of the type of intervention they receive, they seek intervention for the sole purpose of assuring that this court give adequate consideration to the various interstate compacts regulating water use in the Colorado River Basin, and the extent to which Con-

gress and the courts have adopted these compacts. Examination of the answers submitted by the states indicates that only New Mexico and Wyoming advance any arguments based on these compacts. However, neither of these two states seem to intend to engage in the depth of analysis promised by the entities in Group II. These interstate conferences and compacts are crucial to an understanding of the problems faced by the Basin states and the Administrator in adopting salinity control plans. As such, the information offered by the entities in Group II would appear to be helpful to the court in the consideration of this matter. *Commonwealth Edison Co. v. Train, supra.* Therefore, the court will permit the entities in Group II to intervene for the limited purpose of briefing the court on the extent and effect of the various interstate water use compacts in the Colorado River Basin.

An appropriate Order accompanies this Memorandum Opinion.