UNITED STATES of America, et al., Plaintiffs,

v.

HOOKER CHEMICALS & PLASTICS CORPORATION, et al., Defendants.

No. CIV–79–988C.

United States District Court, W.D. New York.

March 12, 1984.

U.S. Dept. of Justice, Environmental Enforcement Section, Land and Natural Resources Div., Washington, D.C. (Michael Elder, Washington, D.C., of counsel), for plaintiff U.S.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Marcia J. Cleveland, Asst. State Atty. Gen., New York City, of counsel), for plaintiff State of N.Y.

Wald, Harkrader & Ross, Washington, D.C. (Thomas H. Truitt, Washington, D.C., of counsel), for defendants Occidental.

Gellman, Brydges, Schroff & Schweitzer, Niagara Falls, N.Y. (Joel Schweitzer, Niagara Falls, N.Y., of counsel), for defendant City of Niagara Falls.

Lewis Steele, Niagara Falls, N.Y., for applicant for intervention Niagara Environmental Action.

Cleveland, Cantor & Morrison, Buffalo, N.Y. (Barbara Morrison, Buffalo, N.Y., of counsel), for applicants for intervention Ecumenical Task Force, Operation Clean Niagara, and Pollution Probe Foundation.

CURTIN, Chief Judge.

## I.

This case concerns the present and potential dangers caused by the presence of toxic substances in an eight-acre chemical dump site known as the S-Area Landfill. The S-Area is located in the City of Niagara Falls, New York, near the Niagara River and adjacent to the Niagara Falls Drinking Water Treatment Plant. The United States commenced this action in December, 1979, under the "imminent hazard" and "emergency" provisions of the Safe Drinking Water Act (42 U.S.C. § 300i), the Resource Conservation and Recovery Act (42 U.S.C. § 6973), and the Clean Water Act (33 U.S.C. § 1364).

The United States, New York State, and Niagara Falls concluded three years of settlement negotiations in December, 1983, when counsel agreed upon a settlement. A proposed judgment was then lodged with the court on January 10, 1984. It now awaits court approval.

Pending before the court are motions to intervene filed by four private groups concerned about the present and future condition of the Niagara River and Lake Ontario. On February 10, 1984, the court granted a similar motion filed by the Province of

Ontario and its Minister of the Environment.[1] —— F.Supp. ——. The present applicants are Niagara Environmental Action, the Ecumenical Task Force, Operation Clean Niagara, and the Pollution Probe Foundation.

Niagara Environmental Action moved for intervention in 1982. After hearing oral argument upon this motion, I had serious questions concerning the membership and actual functions of Niagara Environmental Action. Accordingly, I ordered counsel to provide the court with information detailing this organization's history, membership, and activities. (Supplemental Order #3, Docket Item 65, October 5, 1982.) Counsel responded in November, 1982, by filing an affidavit of Kenneth Raymond, the group's president. After reviewing these papers, I am satisfied that this group is a *bona fide* organization.

According to the Raymond affidavit, Niagara Environmental Action has 24 members. Twenty-one members live in Niagara Falls, New York, two live in Lewiston, New York, and one lives in the Town of Niagara, New York. The organization was founded in late 1981 and meets once a month.

Niagara Environmental Action is not a professional organization. The group has not produced any publications, although it has filed written comments on each draft New York State Pollution Discharge Elimination System permit issued by the New York State Department of Environmental Conservation for the discharge of industrial pollution into the Niagara River. Calling itself a "fledging organization," Niagara Environmental Action assures the court that the group will receive the assistance of a geologist and a toxicologist if allowed to intervene. The last documents filed in connection with the Niagara Environmental Action application were filed in the spring of 1983.

In the summer of 1983, the court received intervention applications from the Province of Ontario, the Ecumenical Task Force, the Pollution Probe Foundation, and Operation Clean Niagara. Oral arguments were heard on the motions of these four applicants on October 12, 1983. As previously noted, Ontario has been granted a limited right to intervene.

The Ecumenical Task Force, Pollution Probe Foundation, and Operation Clean Niagara are represented by the same attorney, Ms. Barbara Morrison, and these three groups seek to intervene pursuant to a single motion and proposed complaint in which they all join. The Ecumenical Task Force is a non-profit New York corporation established in 1979. It has about 75 members, including an 18-person Scientific Advisory Board. The members are selected annually from 10 Western New York denominational institutions which formed the group in 1979. The group is dedicated to the protection of health and the environment from chemical and radiological contamination. Many of its members drink the water threatened by the S-Area dump, and many others use the Niagara River and Lake Ontario for recreation. (Affidavit of Barbara Morrison, Docket Item 82, pp. 2–4.)

The Pollution Probe Foundation is a nonprofit Ontario corporation established in 1969. This group has about 1,000 members who live in various Canadian communities, with a majority residing in the Great Lakes Region. The Pollution Probe Foundation has numerous publications to its credit and has concentrated much of its research upon the chemical contamination of the Niagara River and Lake Ontario. This group includes a Scientific Advisory Board. (Morrison affidavit, *supra*, at 5.)

Operation Clean Niagara is an unincorporated, non-profit association formed in 1979 which now has approximately 600 members living in the Niagara Region of Ontario.

---

**1.** ·Supplemental Order #9, Docket Item 128. Pursuant to that order, the Province of Ontario will be allowed to press a state common law nuisance claim, although it may not assert claims under the citizens suits provisions of the Clean Water Act (33 U.S.C. § 1365) and the Resource Conservation and Recovery Act (42 U.S.C. § 6972).

Its members get their drinking water from the Niagara River and Lake Ontario. Operation Clean Niagara has participated in many conferences and other meetings at which environmental issues were discussed, and it receives scientific advice from its own Technical Advisory Committee. It also received assistance from Pollution Probe Foundation's Scientific Advisory Board. (Morrison affidavit, *supra,* at 7–8.)

Each of the applicants contends that it is entitled to intervene in this lawsuit as a matter of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. In the alternative, the applicants seek permissive intervention pursuant to Rule 24(b). In addition, Niagara Environmental Action contends that the environmental statutes under which the United States commenced this action provide an unconditional right to intervene under Rule 24(a)(1).[2] For the reasons stated below, the motions to intervene in this lawsuit are denied.

## II.

### Right of Intervention Under Federal Environmental Statutes

Only Niagara Environmental Action argues that the emergency and imminent hazard provisions of the Resource Conservation and Recovery Act, the Clean Water Act, and the Safe Drinking Water Act create civil actions into which a private entity may intervene pursuant to the citizen suits provisions of those statutes. It should be noted that in *United States v. Hooker Chemical and Plastics Corp.,* 540 F.Supp. 1067, 1080–81 n. 7 (W.D.N.Y.1982) (Hyde

Park Landfill) (hereinafter cited as *Hyde Park* ), this court held that the same intervention provision of the Resource Conservation and Recovery Act (42 U.S.C. § 6972(b)(2)) now invoked by Niagara Environmental Action does not apply to actions commenced under that statute's "imminent hazard" provision (42 U.S.C. § 6973). Thus, Niagara Environmental Action is asking the court to depart from the position it took on this point in the *Hyde Park* case.

In *Hyde Park,* the court recognized a right to intervene in a case in which the United States invoked the enforcement provision of the Clean Water Act (33 U.S.C. § 1319). *Hyde Park, supra,* at 1071. The Clean Water Act has a citizen suits provision which confers a right to intervene in such an action. 33 U.S.C. § 1365(b)(1). However, the court also held that The Resource Conservation and Recovery Act's similarly worded citizen suits provision (42 U.S.C. § 6972) did not grant a right to intervene because it did not apply to cases brought under the Act's "imminent hazard" provision.

The Clean Water Act, the Safe Drinking Water Act, and the Resource Conservation and Recovery Act all contain similarly worded provisions permitting the United States to bring civil actions in emergency situations. These statutes also contain like-worded citizen suits provisions which allow citizens to intervene in actions brought by the government in which it is alleged that the defendant has violated requirements established pursuant to federal law.[3] The nature of an emergency lawsuit

---

**2.** Rule 24 provides in pertinent part as follows:
 Rule 24. Intervention

 (a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the

applicant's interest is adequately represented by existing parties.

 (b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

**3.** The pertinent provisions of the Resource Conservation and Recovery Act (42 U.S.C. §§ 6972, 6973(a)) are set forth as examples.

is clearly different from one in which a violation of a requirement or standard must be alleged. In the latter case, no emergency need exist; all that is required is a violation of a standard or requirement. On the other hand, an emergency or imminent danger civil action may be brought by the government whenever there is a substantial threat to health or the environment. The elements of the two claims are therefore different. Presumably, a defendant could be in violation of a regulation without at the same time being the cause of an imminent and substantial danger.

▓ The language of the aforementioned citizen suits provisions clearly indicates that the right of intervention applies only to a civil action in which the defendant is alleged to be in violation of prescribed federal standards. Moreover, each of these provisions allows citizens to enforce federal requirements by bringing civil actions in their own right when the United States has not already done so. The right to intervene applies to actions which citizens could have commenced in their own right if the government had not acted first. However, emergency and imminent hazard actions may be commenced by the Environ-

mental Protection Agency but not by private citizens. Thus, the express language and internal logic of the Clean Water Act, the Safe Drinking Water Act, and the Resource Conservation and Recovery Act indicate that the statutory·right of intervention does not extend to actions (such as the present one) commenced under the emergency provisions of these statutes. Consequently, Niagara Environmental Action has no statutory right to intervene in this case.

### III.

### *Intervention As of Right Under Rule 24(a)(2)*

▓ To be entitled to intervene as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure, an applicant must show that 1) the application is timely; 2) the applicant has an interest relating to the property or transaction which is the subject matter of the case; 3) the protection of this interest may as a practical matter be impaired by the disposition of the case; and 4) the interest is not being adequately protected by the existing parties. *Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc.*, 725 F.2d

§ 6972. Citizen suits
 (a) In general
 Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—
 (1) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which has become effective pursuant to this chapter; or
 (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator
 . . . .
 (b) Actions prohibited
 No action may be commenced under paragraph (a)(1) of this section—
 (1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator of such permit, standard, regulation, condition, requirement, or order; or
 (2) if the Administrator or State has commenced and is diligently prosecuting a civil or

criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, or order: *Provided, however,* That in any such action in a court of the United States, any person may intervene as a matter of right.
 § 6973. Imminent hazard
 (a) Authority of Administrator
 Notwithstanding any other provision of this chapter, upon receipt of evidence that the handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person contributing to such handling, storage, treatment, transportation, or disposal to stop such handling, storage, treatment, transportation, or disposal or to take such other action as may be necessary. The Administrator shall provide notice to the affected State of any such suit. The Administrator may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and the environment.

871 at 873–874 (2d Cir.1984); *United Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978).

It is not necessary for the court to comment upon the first three factors relating to intervention under Rule 24(a)(2), because the court finds that the applicants have not demonstrated that their interests may be inadequately represented by the existing parties. Presently, the party plaintiffs are the United States, New York State, and plaintiff-intervenor Ontario. The court finds that the interests of the applicants are virtually identical to the interests of the aforementioned party plaintiffs. Moreover, New York and Ontario are governmental entities charged with the duty of protecting the health of their citizens. In a situation such as this, intervention as a matter of right pursuant to Rule 24(a)(2) is appropriate only under limited circumstances which are not present here.

 The burden of showing that existing parties may not be providing adequate representation rests with the applicants. *United Postal Workers v. Brennan, supra,* 579 F.2d 188, 191. In the usual case, this burden is minimal. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). However, courts impose a greater burden upon an applicant when an existing party is a governmental entity charged with protecting the applicant's interests. In cases of this sort, the *parens patriae* principle applies, and it is presumed that the state represents the interests of all its citizens. *Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d 738, 470 (D.C. Cir.1979); 3B MOORE'S FEDERAL PRACTICE, ¶ 24.07[4] at 24–72.

> [T]o intervene in a suit in district court in which a state is already a party, a citizen ... of that state must overcome this presumption of adequate representation. A minimal showing that the representation may be inadequate is not sufficient. *The applicant for intervention must demonstrate that its interest is in fact different from that of the state and that that interest will not be represented by the state.*

*Environmental Defense Fund, Inc. v. Higginson,* 631 F.2d at 740 (emphasis added).

This heightened standard of analyzing the adequacy of the representation of the present plaintiffs applies to each of the applicants now seeking to intervene in this lawsuit. The members of the Ecumenical Task Force and Niagara Environmental Action are represented by New York State and the United States, and the members of Pollution Probe Foundation and Operation Clean Niagara are represented by the Province of Ontario. While it is true that Ontario was not a party to the action when Pollution Probe Foundation and Operation Clean Niagara filed their motions, Ontario's motion to intervene has now been granted, and it would be unrealistic to analyze the application of the Canadian movants without considering the application and current status of the Province. Since Ontario is the governmental entity intervening as *parens patriae* for its residents, the *parens patriae* doctrine applies to Pollution Probe Foundation and Operation Clean Niagara.

The State of New York does not oppose intervention by the Ecumenical Task Force and Niagara Environmental Action. However, this does not modify the legal analysis in which the court must engage concerning the question of adequate representation. In fact, New York does not suggest that its representation of the American applicants' interest of checking the migration of chemicals from the S-Area is inadequate. For example, New York's response to Niagara Environmental Action's application says only that Niagara Environmental Action had met its minimal burden of showing that the State may not adequately represent Niagara Environmental Action's personal and property damage claims asserted in its ancillary causes of action.[4]

---

4. Response of State of New York to Motion to Intervene, Docket Item 57, pp. 4–5. Niagara

Applying the heightened standard implicit in the *parens patriae* doctrine, the court finds that none of the applicants has shown that its interest is different or that it will not be adequately represented by the State of New York, the United States, and the Province of Ontario.

## A. Pollution Probe Foundation and Operation Clean Niagara

The interests of the Canadian applicants (Pollution Probe Foundation and Operation Clean Niagara) are identical to those which plaintiff-intervenor Ontario seeks to protect by joining in this lawsuit. Oral argument on the motion of Ontario and the joint motions of Pollution Probe Foundation, Operation Clean Niagara, and Ecumenical Task Force was held on the same day, and there was no argument that Ontario would not provide adequate representation. Nor is there any other indication that Ontario will provide anything less than the diligent and thorough representation which this court expects from the Province. Both the Province and the two private groups want the remedial program to address the problem of chemical migration through bedrock towards areas which underlie the Niagara River and the land in the Niagara Region of Ontario. Although there was a possibility that these matters would not have been adequately represented before Ontario became a party to this lawsuit, this does not hold true now. Consequently, Pollution Probe Foundation and Operation Clean Niagara are not entitled to intervene in this lawsuit as a matter of right. Fed.R.Civ.P. 24(a)(2); *Environmental Defense Fund, Inc. v. Higginson, supra,* 631 F.2d at 740; *Delaware Valley Citizens' Council For Clean Air. v. Com. of Pennsylvania,* 674

F.2d 970, 973 (3d Cir.1982); 3B MOORE'S FEDERAL PRACTICE, *supra,* ¶ 24.07[4]; 7A C. WRIGHT AND A. MILLER, *Federal Practice and Procedure,* § 1909 (1972).

## B. Ecumenical Task Force

The court reaches the same result on the motion of the Ecumenical Task Force. The Ecumenical Task Force concedes that the "minimal" standard applicable in the typical case is "modified by the existence of governmental parties." (Brief of Ecumenical Task Force, Pollution Probe Foundation, and Operation Clean Niagara, Docket Item 105, p. 19.) However, the Ecumenical Task Force relies heavily on *United States v. Reserve Mining Company,* 56 F.R.D. 408 (D.Minn.1972), a case in which the court analyzed the adequacy of representation question under a very permissive standard which later cases suggest should not be applied in a case like the present one. The Ecumenical Task Force also cites a case decided by the United States Court of Appeals for the Second Circuit in which a governmental agency was a party and the intervenor's application was apparently analyzed under the minimal standard. *New York Public Interest Research Group v. Regents of the University of the State of New York,* 516 F.2d 350 (2d Cir.1975) (hereinafter cited as *NYPIRG*). However, in *NYPIRG,* the controversy related to regulations prohibiting the advertising of the price of prescription drugs. The court noted that the applicants' interest in defending the regulations was mainly economic and that the Regents admitted that their interests may have been significantly different. Moreover, *NYPIRG* was a case in which the applicants sought to intervene in order to defend a regulation that benefited them.[5] Even so, the adequacy of the Re-

---

Environmental Action's proposed complaint sets forth 16 claims. The first 3 are based upon the federal statutes discussed above. In addition, there are 2 nuisance claims, 3 negligence claims, 1 for reckless misconduct, and others for trespass, product liability, battery, assault, emotional disturbance (2 claims), and punitive damages.

**5.** It is not uncommon for courts to depart from the *parens patriae* doctrine when the action is

one in which government regulations are challenged and private parties who benefit from such regulations seek to intervene as defendants. 3B MOORE'S FEDERAL PRACTICE, *supra,* ¶ 27.07[4] at 24–. *Natural Resource Defense Council v. Costle,* 561 F.2d 904 (D.C.Cir.1977), also relied upon by the Ecumenical Task Force, is also a case of that nature. The present action is not such a case.

gents' representation presented what the court viewed as a relatively close question. *Id.* at 352.

There is no such divergence of interests in the present case. The relief sought by the Ecumenical Task Force is strictly injunctive: the containment of the chemicals in the S-Area Landfill and continued monitoring of the site. These objectives do not differ from those of New York State and the United States. Nor is the court persuaded that the Ecumenical Task Force is entitled to intervene on the strength of its argument that no other party shares its "specific emphasis of concern." These concerns deal with safety and health, and while the court does not minimize their importance, the court cannot ignore the fact that these concerns are the same ones that have prompted the commencement of this action by the governmental parties. The lack of a personal connection between the governments and the hazards they seek to prevent by prosecuting this lawsuit is not an indication that the governments' representation will be inadequate or that their interests are in fact different from those of the applicants. The Ecumenical Task Force's application to intervene as a matter of right is therefore denied. *Environmental Defense Fund, Inc. v. Higginson, supra* 631 F.2d at 740; *Delaware Valley Citizens Council for Clean Air v. Com. of Pennsylvania, supra,* 674 F.2d at 973.

### C. Niagara Environmental Action

The application of Niagara Environmental Action must be denied for similar reasons. Unlike the other applicants, Niagara Environmental Action seeks damages for injuries to persons and property. These are the types of interests which New York State admits it does not represent. However, even if none of the parties represents Niagara Environmental Action's property interests, this does not compel the conclu-

sion that Niagara Environmental Action may intervene as a matter of right.

The federal statutes invoked by Niagara Environmental Action are the citizen suits provisions of the Safe Drinking Water Act, the Clean Water Act, and the Resource Conservation and Recovery Act. As previously noted, these statutes do not confer a right to intervene in the present action. Even if they did confer such a right, Niagara Environmental Action could not recover damages in an action predicated upon these statutes. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *City of Evansville, Indiana v. Kentucky Liquid Recycling, Inc.,* 604 F.2d 1008 (7th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980).[6] Therefore, the damages which Niagara Environmental Action seeks to recover must be derived solely from its claims based upon New York common law.

The New York common law claims asserted by Niagara Environmental Action were injected into this case after the United States started this action in 1979 and, of course, Niagara Environmental Action is not an original plaintiff in this action. Consequently, these are ancillary claims. *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 810 (2d Cir.1977). When an applicant is not entitled to intervene as a matter of right in an existing lawsuit, he cannot add his own causes of action unless these are supported by independent jurisdictional grounds. *Blake v. Pallan,* 554 F.2d 947, 956 (9th Cir.1977). Ancillary claims cannot be asserted by a permissive intervenor. Thus, if Niagara Environmental Action is not entitled to intervene under Rule 24(a), this court cannot hear its ancillary claims.

There are also practical reasons why damage claims should not be decided within the existing lawsuit. The case in its

---

6. *Sea Clammers* and *Kentucky Liquid Recycling* dealt with the citizen suits provisions of the Clean Water Act. However, the Clean Water Act's counterparts in the Safe Drinking Water Act and the Resource Conservation and Recovery Act are so similar to the Clean Water Act provision that the court believes that the same limitations apply to these statutes as well.

present form already presents the court with immensely complicated issues relative to stopping the migration of S-Area chemicals. Injecting the complex legal and factual issues related to the ancillary claims would place an undue burden upon the court. Such claims ought to be asserted in state court.

With respect to the question of checking the migration of S-Area chemicals, Niagara Environmental Action states that it has strong disagreements with the United States and New York State. In particular, it argues that the plaintiffs have not maintained a ground water monitoring program, have not seriously considered the possibility of relocating the water treatment plant, and that the governmental parties are not as "environmentally conscious" as Niagara Environmental Action. However, the injunctive relief sought by the United States includes ground water monitoring and, if necessary, the relocation of the water treatment plant. Because the court can see no real difference in the interests of Niagara Environmental Action and the governmental parties, and because there is no indication that the plaintiffs will not diligently and competently seek and implement a remedy, there is no basis for intervention as a matter of right.

IV.

*Permissive Intervention*

■ The joint application of the Ecumenical Task Force, Pollution Probe Foundation, and Operation Clean Niagara and the attached proposed complaint seeks intervention for the purpose of prosecuting nine common law claims (for nuisance, assault, and battery), over which the court is said to have ancillary jurisdiction. However, the court has found that the Ecumenical Task Force, Operation Clean Niagara, and Pollution Probe Foundation have no right to intervene under Rule 24(a), and as previously noted, ancillary jurisdiction is not available to permissive intervenors. *Blake v. Pallan, supra,* 554 F.2d at 956. Consequently, these groups cannot intervene permissively under Rule 24(b).

■ With respect to Niagara Environmental Action, the court does not believe that permissive intervention would be helpful in this case. There are presently three governmental plaintiffs, including the Province of Ontario, and the court does not believe that further complication of an already complex lawsuit will be counter-balanced by such assistance as Niagara Environmental Action will be able to provide in arriving at and implementing a remedy. Since permissive intervention is a matter for the discretion of the trial court (*Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., supra,* 725 F.2d at 876–877), I believe that, for the above-stated reason, permissive intervention ought to be denied in this case.

In reaching this conclusion, the court by no means suggests that intervenors are unwelcome in environmental lawsuits. The court realizes that citizen participation is to be welcomed and encouraged. *Friends of the Earth v. Carey,* 535 F.2d 165, 172 (2d Cir.1976). Accordingly, the court strongly encourages each of the applicants to participate as *amici curiae* in the hearings that will be held in connection with the court's review of the proposed settlement and judgment. The Ecumenical Task Force, Pollution Probe Foundation, and Operation Clean Niagara participated in this capacity in the *Hyde Park* hearings, and the court believes that this was very beneficial. The court invites and expects the same sort of participation from Niagara Environmental Action and again from the other groups in the present case.

V.

*Conclusion*

The applications of Niagara Environmental Action, the Ecumenical Task Force, the Pollution Probe Foundation, and Operation Clean Niagara to intervene as a matter of right and permissively are denied. The court welcomes the participation of these groups as *amici curiae* in the upcoming hearings.

So ordered.