NEW JERSEY *v.* NEW YORK ET AL.

No. 5, Original, October Term, 1950.   Argued March 9, 1953.—
Decided April 6, 1953.

*Abraham L. Freedman* argued the cause for the City of Philadelphia. With him on the brief was *Robert M. Landis.*

*John P. McGrath* argued the cause for the City of New York, defendant. With him on the brief were *Denis M. Hurley, Jeremiah M. Evarts, James J. Thornton* and *Richard H. Burke.*

*Edward L. Ryan,* Assistant Attorney General, argued the cause for the State of New York, defendant. With him on the brief were *Nathaniel L. Goldstein,* Attorney General, and *Wendell P. Brown,* Solicitor General.

*Bernard G. Segal* argued the cause for the State of Pennsylvania, intervenor. With him on the brief were *Robert E. Woodside,* Attorney General, *George G. Chandler, Wm. A. Schnader* and *Harry F. Stambaugh.*

*Kenneth H. Murray* argued the cause for the State of New Jersey, complainant. With him on the brief were *Theodore D. Parsons,* Attorney General, *Robert Peacock,* Deputy Attorney General, and *Oscar R. Wilensky.*

PER CURIAM.

The City of Philadelphia has moved this Court for leave to intervene in this original action concerning distribution of Delaware River water. Argument was heard on the motion on March 9, 1953, with all interested parties appearing.

The suit, addressed to this Court's original jurisdiction, was brought by the State of New Jersey, in 1929, against the State of New York and the City of New York, praying for injunctive relief against a proposed diversion of Delaware River water from tributaries within the State of New York. New Jersey joined the City of New York as a defendant, because the City, acting under State authority, was planning the actual diversion of the water

for its use. The Commonwealth of Pennsylvania immediately petitioned for leave to intervene *pro interesse suo*. Leave to intervene was granted, upon condition that the Commonwealth file a statement of her interest in the cause and of the relief, if any, which she sought. 280 U. S. 528. Pennsylvania filed her Statement of Interest and Relief on January 10, 1930, and thereafter became an active party in the proceedings before the Special Master. In 1931, this Court confirmed the Special Master's Report, 283 U. S. 336, and entered its decree in conformity therewith, 283 U. S. 805.

The 1931 decree enjoined the State of New York and the City of New York from diverting from the Delaware River or its tributaries more than 440 million gallons daily, subject to a prescribed formula for the release of storage water during periods of low flow. The decree further provided:

> "6. Any of the parties hereto, complainant, defendants or intervener, may apply at the foot of this decree for other or further action or relief and this Court retains jurisdiction of the suit for the purpose of any order or direction or modification of this decree, or any supplemental decree that it may deem at any time to be proper in relation to the subject matter in controversy." *Id.*, at p. 807.

On April 1, 1952, the City of New York, with the approval and support of the State of New York, moved under paragraph 6 of the 1931 decree for leave to file its petition to modify the decree by providing for diversion of additional quantities of water and for changes in the prescribed formula for releasing water during low flow. The motion was granted. 343 U. S. 974. New Jersey and Pennsylvania filed answers opposing the proposed modifications, and the whole matter was referred to a Special Master. *Ibid.*

On December 13, 1952, the City of Philadelphia filed this motion for leave to intervene. The petition asserts Philadelphia's unquestioned interest in the use of Delaware River water and points to the recent grant of her Home Rule Charter as justification for intervention at this point. All of the present parties to the litigation have formally opposed the motion to intervene on grounds (1) that the intervention would permit a suit against a state by a citizen of another state in contravention of the Eleventh Amendment; (2) that the Commonwealth of Pennsylvania has the exclusive right to represent the interest of Philadelphia as *parens patriae;* and (3) that intervention should be denied, in any event, as a matter of sound discretion. Philadelphia contends that the matter is entirely within the sound discretion of this Court, which should be exercised as prayed to assure that every worth-while interest is represented in the ultimate decree.

The view we take of the matter makes it unnecessary to decide whether Philadelphia's intervention in the pending litigation would amount to a ". . . suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . ." in violation of the Eleventh Amendment. For the same reasons, we are not concerned with so much of the *"parens patriae"* argument as may be only a restatement of the proposition that original jurisdiction against a state can only be invoked by another state acting in its sovereign capacity on behalf of its citizens. Cf. *New Hampshire* v. *Louisiana,* 108 U. S. 76 (1883); *North Dakota* v. *Minnesota,* 263 U. S. 365 (1923). The *"parens patriae"* doctrine, however, has aspects which go beyond mere restatement of the Eleventh Amendment; it is a recognition of the principle that the state, when a party to a suit involving a matter of sovereign interest, "must be deemed to represent all its citizens." *Kentucky* v. *In-*

*diana,* 281 U. S. 163, 173–174 (1930). The principle is a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration. Otherwise, a state might be judicially impeached on matters of policy by its own subjects, and there would be no practical limitation on the number of citizens, as such, who would be entitled to be made parties.

The case before us demonstrates the wisdom of the rule. The City of Philadelphia represents only a part of the citizens of Pennsylvania who reside in the watershed area of the Delaware River and its tributaries and depend upon those waters.* If we undertook to evaluate all the separate interests within Pennsylvania, we could, in effect, be drawn into an intramural dispute over the distribution of water within the Commonwealth. Furthermore, we are told by New Jersey that there are cities along the Delaware River in that State which, like Philadelphia, are responsible for their own water systems, and which will insist upon a right to intervene if Philadelphia is admitted. Nor is there any assurance that the list of intervenors could be closed with political subdivisions of the states. Large industrial plants which, like cities, are corporate creatures of the state may represent interests just as substantial.

Our original jurisdiction should not be thus expanded to the dimensions of ordinary class actions. An intervenor whose state is already a party should have the burden of showing some compelling interest in his own right, apart from his interest in a class with all other citizens and creatures of the state, which interest is not properly represented by the state. See *Kentucky* v. *Indiana, supra.* Philadelphia has not met that burden and,

---

*Census figures for 1950 show that there were 4,061,420 Pennsylvania citizens within the watershed, of which 2,071,605, or about half, are in Philadelphia.

therefore, even if her intervention would not amount to a suit against a state within the proscription of the Eleventh Amendment (and we do not intend to give any basis for implying that it does), leave to intervene must be denied.

Pennsylvania intervened in 1930, *pro interesse suo,* to protect the rights and interests of Philadelphia and Eastern Pennsylvania in the Delaware River. The Commonwealth opposed New Jersey's position based on common-law riparian rights, since that proposition threatened the right of Philadelphia and Eastern Pennsylvania to continue their use and development of the Delaware River and its Pennsylvania tributaries. Pennsylvania's position was based upon the doctrine of fair and equitable apportionment, and New York's proposed diversion had to be resisted to the extent it might amount to a diversion of more than a fair and equitable share. This Court recognized the propriety of Pennsylvania's peculiar position, based on the interests of its citizens, and permitted intervention over vigorous opposition that the intervenor must be aligned either with plaintiff or defendant.

Pennsylvania's position remains vigorous and unchanged in the face of the petition for additional diversion. She is opposed to any such additional diversion not justified under the doctrine of equitable apportionment. Counsel for the City of Philadelphia have been unable to point out a single concrete consideration in respect to which the Commonwealth's position does not represent Philadelphia's interests. We do not see how Philadelphia's Home Rule Charter changes the situation. Though Philadelphia is now responsible for her own water system under the Charter, that responsibility is invariably served by the Commonwealth's position.

The presence of New York City in this litigation is urged as a reason for permitting Philadelphia to intervene. But the argument misconstrues New York City's

position in the case. New York City was not admitted into this litigation as a matter of discretion at her request. She was forcibly joined as a defendant to the original action since she was the authorized agent for the execution of the sovereign policy which threatened injury to the citizens of New Jersey. Because of this position as a defendant, subordinate to the parent state as the primary defendant, New York City's position in the case raises no problems under the Eleventh Amendment. *Wisconsin* v. *Illinois and Sanitary District of Chicago,* 278 U. S. 367 (1929), and 281 U. S. 179 (1930); cf. *Georgia* v. *Tennessee Copper Co.,* 206 U. S. 230 (1907). New York City's position is not changed by virtue of the fact that she is presently the moving party, so long as the motion for modification of the 1931 decree comes within the scope of the authorization of paragraph 6 of that decree.

The motion for leave to intervene and file an answer is, therefore,

*Denied.*

MR. JUSTICE JACKSON, whom MR. JUSTICE BLACK joins, dissenting.

We desire the record to show why we would allow Philadelphia to intervene in this case.

The city, of course, is not an indispensable party, and it is generally bad policy to encumber any case with unnecessary intervenors. We have no doubt whatever that counsel for the Commonwealth will faithfully and ably represent the interests of all of its inhabitants, including those of Philadelphia. Nonetheless, we would allow the intervention because of circumstances peculiar to this case.

We do not write today upon a clean slate. New York City, as well as New York State, is a party to this action. It is true that the city was made a defendant in the origi-

nal case. But that case was long ago decided. New York City is the moving party now, in reopening the decree. The interests of municipality and state are no more separate in the case of New York than of Philadelphia. Both cities have home-rule powers and vital interests in this litigation. New York City is the real party in interest in the current application for a modification of an existing decree and it is in a position to present its own claims. We would allow Philadelphia's motion to present any proper evidence that it deems protective of its interest. This would not be merely a favor to that city. It would also protect the position of this Court if the master should report in favor of New York, and Philadelphia, with the wisdom that comes from hindsight, should ask to oppose confirmation upon the ground that its interests had not had full consideration.

It is objected that, if Philadelphia is admitted, other municipalities may apply. That may be so. We are not believers in town-meeting lawsuits. But certainly few others could show comparable home-rule power and magnitude of interest, and we must not forget that this is no ordinary lawsuit. It may have grave consequences upon one or the other or both municipalities. Since the Court is hearing one of them, we would bear with some inconvenience rather than have the other aggrieved from the beginning by being shut out.