UNITED STATES of America,
Petitioner,

v.

Bruce CROOKSHANKS, Defendant.

UNITED STATES of America,
Petitioner,

v.

Steven Walker GRAY, Defendant.

UNITED STATES of America,
Petitioner,

v.

Ross F. LINDSTROM, Defendant.

Nos. CR 77–168 to CR 77–170.

United States District Court,
D. Oregon.

Nov. 29, 1977.

Sidney I. Lezak, U. S. Atty., Jack G. Collins, First Asst. U. S. Atty., District of Oregon, Portland, Or., for petitioner.

Clemens E. Ady, of White, Sutherland, Parks & Allen, Portland, Or., for defendant.

## ORDER DENYING MOTIONS TO DISMISS

SKOPIL, Chief Judge.

These prosecutions for criminal contempt (18 U.S.C. § 401(3)) were commenced by orders to show cause why respondents should not be held in contempt for violation of an order of this court.

The order alleged to have been violated is a Temporary Restraining Order ("TRO") entered by Judge Belloni on August 23, 1977, in *United States v. Oregon,* Civil No. 68–513 (D.Or.). That action involves the rights of certain Treaty Indians to shares of fish resources in the Columbia River.

The TRO in question restrained the Columbia River Fishermen's Protective Union, Inc., a corporation, and Leslie Clark, an individual, and all persons in active concert or participation with them, from engaging in a chinook salmon fishery with gillnets for commercial purposes in the Columbia River below the Bonneville Dam after 6:00 p.m. on August 23, 1977.

Judge Belloni entered the TRO immediately after a Washington state court entered a preliminary injunction enjoining Washington officials from enforcing fishing regulations which had been agreed upon by appropriate Washington and Oregon officials and intended to protect the rights of Indian fishermen. *Columbia River Fishermen's Protective Union v. Ray,* No. 58054 (Thurston County Superior Court, August 23, 1977). The Indian rights involved are ones which Judge Belloni held to have arisen from treaties entered into between the Indians and the United States. Such treaties, of course, are a part of the "Supreme Law of the Land". *U.S.Const.,* Art. VI, cl. 2.

The petitions for orders to show cause allege in effect that each respondent participated in a commercial gillnet fishery for salmon on the Columbia River below Bonneville Dam after 6:00 p.m. on August 23, 1977.

These cases are now before me on respondents' motions to dismiss. In deciding these motions I have considered the legal memoranda submitted by respondents and by the government, as well as oral argument heard October 4, 1977.

*Personal Jurisdiction*

■ The geographical boundary between Oregon and Washington is the midchannel of the Columbia River. Act of July 31, 1958, Pub.L. 85–575, 72 Stat. 455; ORS 186.510; RCW 43.58.050. For present purposes I assume that the acts alleged occurred on the Washington side of the midchannel line. Respondents argue that the jurisdiction of this court does not extend, under the circumstances of these cases, past the midchannel boundary. I disagree.

■ Under the Act of Congress admitting Oregon to the Union, the State of Oregon has "jurisdiction in civil and criminal cases upon the Columbia River . . concurrently with" bordering states. Act of Feb. 14, 1859, ch. 33, § 1, 11 Stat. 383. The geographical reach of personal jurisdiction by this court—the United States District Court for the District of Oregon—is identical[1] to that of the Oregon state courts. See 28 U.S.C. § 117. Both an early and more recent decision by this court establish that the process of this district is effective on the Columbia even north of the midchannel boundary. *The Annie M. Smull,* 1 Fed.Cas. 938 (No. 423) (D.Or.1872);

---

1. The scope of personal jurisdiction of the federal district courts is even broader than that of the state courts under certain statutes—such as those regulating securities—not applicable here.

*W. J. Jones & Co. v. Stocker,* 271 F.Supp. 437 (D.Or.1967).

The Supreme Court case of *Nielsen v. Oregon,* 212 U.S. 315, 29 S.Ct. 383, 53 L.Ed. 528 (1909), is inapplicable here. In that case Oregon law specifically prohibited fishing on the Columbia on Sundays. Washington law specifically authorized such fishing. Nielsen, a Washington citizen, was convicted by an Oregon court of fishing on Sunday on the Washington portion of the river. The Supreme Court reversed, holding that the State of Oregon cannot override the will of the legislature of Washington and punish a person for doing in Washington something he is authorized to do by the laws of that state.

The situation presented here is different. The TRO issued by Judge Belloni does not purport to enforce "Oregon" law in conflict with "Washington" law. Rather, the TRO seeks to protect rights established by *federal* law—the Indian treaties.

This court has personal jurisdiction over respondents.

### Scope of the TRO

Respondents argue that the TRO was unenforceable against them because they were not parties to the underlying litigation (*United States v. Oregon, supra*), nor were they connected with any of the parties as "officers, agents, servants, employees and attorneys" or acting "in active concert or participation with" any party. Fed.R.Civ.P. 65(d).

■ There are a number of reasons why the TRO was valid as against respondents. First of all, there is authority to the effect that a court can enjoin non-parties whose actions threaten to interfere with compliance with prior orders of the court. See cases cited in Gov't's Brief at 6–14, especially *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958); *United States v. Hall,* 472 F.2d 261 (5th Cir. 1972).

■ Second, it can be said that respondents were in privity with a party—the State of Washington. Where a matter of sovereign interest is concerned, a state is often held to adequately represent the interest of its citizens. See *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1957); *New Jersey v. New York,* 345 U.S. 369, 73 S.Ct. 689, 97 L.Ed. 1081 (1953). Judge Belloni has already held that the state adequately represents non-Indian interests. *United States v. Oregon, supra,* Order Denying Motion to Intervene (January 10, 1977).

■ Finally, the TRO can be seen as an *in rem* injunction—that is, an injunction through which the court has taken control of property to assure its proper use. An example of the *in rem* jurisdiction of the federal courts is that of bankruptcy, in which the ability of non-party creditors to enforce their rights is restricted. The *res* in bankruptcy is the estate of the bankrupt. The *res* here is the *right to take fish in the Columbia.* Counsel for respondents correctly argued that the traditional common law rule is that wild animals such as fish are the property of no one until reduced to possession. The res here, however, is not the fish themselves. Rather, the res is the property right consisting of the *opportunity to take* the fish. In protecting this property, held to be guaranteed to the Indians by treaty, this court can properly command the obedience of non-parties to orders of the court.

It is ORDERED as follows:

(1) Respondents' motions to dismiss are denied.

(2) The Clerk will set the matter for status conference, at which time a trial date will be set.