In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al., Debtors.

PENSION BENEFIT GUARANTY CORPORATION, Appellant,

v.

The LTV CORPORATION, et al., Appellees.

The LTV CORPORATION, et al., Plaintiffs/Appellees,

v.

George FARRAGHER, et al., Defendants/Appellants.

UNITED STEELWORKERS OF AMERICA, Appellants,

v.

The LTV CORP., et al., Appellees.

Nos. 87 CV 2502 (RJD), 87 CV 2506 (RJD) to 87 CV 2508 (RJD).

United States District Court, S.D. New York.

Aug. 20, 1987.

Davis, Polk & Wardwell by Karen E. Wagner, Sharon Katz, Helaine Hausner and Levin, Weintraub & Crames by Michael J. Crames, New York City, Leboeuf, Lamb, Leiby & Macrae by Frank Cummings, Washington, D.C., for appellee, LTV Corp.

Pension Benefit Guar. Corp. by Gary Ford, General Counsel, Washington, D.C., Cleary, Gottlieb, Steen & Hamilton by George Weisz, New York City, for appellant in No. 2502, Pension Ben. Guar. Corp.

Anderson, Russell, Kill & Olick, P.C., New York City, Falkenberry, Whatley & Heidt, Birmingham, Ala. by Roy Babitt, David P. Felsher, for appellants in No. 2506.

Buchanan Ingersoll, P.C., Pittsburgh, Pa. by R.A. King, Kenneth R. Bruce, for appellants in No. 2507.

Cohen, Weiss & Simon, New York City by Richard M. Seltzer, Babette Ceccotti, for appellant in No. 2508, United Steelworkers of America.

Tom Bevill, U.S. House of Representatives, Washington, D.C., amicus curiae.

## MEMORANDUM OF DECISION AND ORDER

DARONCO, District Judge.

These appeals arise from an order of the Bankruptcy Court, entered February 26, 1987, which provides,

"that all parties who have been or shall be served with notice of this Order be, and they hereby are, stayed and enjoined from commencing or continuing any action, including any application for injunctive relief, with respect to the Pension Plans or any other employee benefit plans, except for:

a. any action brought by the PBGC [Pension Benefit Guaranty Corp.] to terminate any Pension Plan;

b. any application by any party other than the PBGC to intervene in a proceeding, if any, brought by the PBGC to terminate any Pension Plan;

c. any action brought only against a Pension Plan for the sole purpose of seeking payment of benefits from the assets held in the trust of such Pension Plan;

d. any action brought only against the PBGC as trustee of a Pension Plan for the sole purpose of seeking payment of benefits pursuant to the Pension Plan where such action will not adversely affect LTV by increasing any claim of the PBGC against LTV;

e. any action brought by the PBGC pursuant to Section 1345 of ERISA to recoup for the benefit of the plan payments made to plan participants in excess of statutorily guaranteed benefit levels; and

f. any action brought in this Court for relief from this Order pursuant to the standards of 11 U.S.C. 362(d)

for a period of one year commencing on January 23, 1987, at the conclusion of which time this Court will review the positions and contentions of the parties within the context of the pending reorganization proceeding to determine at that time whether this injunction should be continued;"

The Order also continued an injunction ("Employee Litigation Order"), initially entered October 15, 1986 pursuant to an adversary proceeding in which PBGC was not named as a party. Under its terms, which are effective against the PBGC for one year beginning January 23, 1987, all actions against the debtor's present and former employees are stayed.

LTV, directly and through various subsidiaries, has been the administrator of approximately 30 defined benefit Pension Plans funded by annual contributions from LTV. Approximately 140,000 retirees and active employees are participants in or beneficiaries of these plans. One of the primary reasons for the filing of the bankruptcy petitions has been LTV's inability to fund the Pension Plans, and a major goal of the proceeding is to address these liabilities through a plan or plans of reorganization.

In 1985, LTV obtained a waiver of payment of approximately $175 million of minimum funding requirements for three of the Pension Plans for the plan year 1984. After its filings in 1986, LTV applied for another waiver of approximately $215 million of contributions for 12 of the Pension Plans for the plan year 1985. On November 12, 1986, LTV was notified that the 1985 waiver had been denied and that the 1984 waiver was deemed void. As a result, $390 million of unpaid contributions became due and payable as of the original due dates. On September 30, 1986, the Pension Benefit Guaranty Corporation (appellant in No. 2502), the federal agency charged with administering the Employee Retirement Income Security Act ("ERISA"), the federal law governing the Pension Plans at issue, obtained a consent Order in this Court terminating one of the Pension Plans effective September 30, 1986. On January 12, 1987, three other Pension Plans were terminated by the PBGC as of January 13, 1987, pursuant to consent Orders entered in this Court. *See Jones & Laughlin Hourly Pension Plan v. LTV Corp.*, 824 F.2d 197 (2d Cir.1987). The present value of LTV's unfunded termination liability concerning these Pension Plans exceeds $2 billion; hence, given the statutory provisions which empower the PBGC to protect the beneficiaries, *see In re Pension Plan, etc.*, 707 F.2d 647, 648–49 (2d Cir.1983), PBGC is LTV's largest and most formidable creditor.

In addition to the staggering liability, the Pension Plans have also generated other litigation. On November 13, 1986, George Farragher, as lead plaintiff for a group of former salaried employees (appellants in No. 2506) of the Republic Steel Corporation, a subsidiary of the debtor, sued Pension Plan fiduciaries and LTV executives in the Northern District of Alabama, alleging violations of ERISA and RICO stemming from the shutdown of the Gadsden Alabama facility. Earlier, in April, 1986, and in the same Court, the United Steelworkers of America (USWA) and the hourly employees as a class sued LTV and Gulf States Steel Corp. alleging breaches of a collective bargaining agreement, with respect to the same plant. At almost the same time as initiation of the Farragher suit, on November 17, 1986, Miller and Shaffer (appellants in No. 2507) sued the Jones & Laughlin Retirement Plan in the Western District of Pennsylvania to prevent termination of a Pension Plan in which they participated. Jones & Laughlin Steel had been merged with Republic Steel to form LTV Steel, a subsidiary of the debtor.

The filing of the petition for reorganization had already stayed the United Steelworkers suit and resulted in dismissal of another lawsuit, *Harrison v. LTV Steel Co., Inc., et al*, pending in the Northern District of Alabama since 1984. On January 7, 1987, the Court dismissed the *Harrison* action, which alleged a violation of

plaintiff's pension rights under a collective bargaining agreement,

"without prejudice to plaintiff to file a claim in bankruptcy or to petition to reinstate this action to pursue any claim embraced herein and not adjudicated in, or discharged by, the proceedings in the bankruptcy court. Such reinstatement, if and when allowed, will cause the filing date of any claim so reinstated to relate back to the original filing date of this action."

(Appendix Exh. 24 G). The debtor also filed two adversary proceedings in the Bankruptcy Court, one against the plaintiffs in the Farragher suit and one against Miller and Shaffer, which succeeded in staying those suits, and others anticipated by the debtor relating to the debtor's Pension Plan liabilities.

It is LTV's contention that the Order of February 26, 1987, referred to as the Pension Injunction Order, is an appropriate exercise of jurisdiction pursuant to 28 U.S.C. Section 157(b)(2)(A), to extend the reach of an automatic stay, 11 U.S.C. Section 362, to protect its reorganization and the Bankruptcy Court's jurisdiction over its assets. In response, appellants' characterization of the Order may be collectively summarized as extraordinary injunctive relief, pursuant to 11 U.S.C. Section 105(a), issued without legal or factual support and restraining lawsuits which are neither directed against nor seek anything from the debtor.

Turning first to the Farragher appeal, which presents the interplay between Sections 105 and 362, the Court of Appeals for the Second Circuit has stated,

"While we decline to define under what circumstances, if any, a bankruptcy court may properly exercise § 105 jurisdiction to issue a stay with respect to nonbankrupt co-defendants, it is clear that any such jurisdiction cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment."

*Teachers Ins. & Annuity Ass'n of America v. Butler,* 803 F.2d 61, 65 (2d Cir.1986).

This observation suggests that Section 105(a) creates jurisdiction, a point contradicted in *In re Johns-Manville Corp.,* 801 F.2d 60, 63–64 (2d Cir.1986) ("Section 105[a] does not, however, broaden the bankruptcy court's jurisdiction, which must be established separately under 28 U.S.C. § 157 ..."). Quoting from *In re Johns-Manville Corp.,* 40 B.R. 219, 226 (S.D.N.Y. 1984), the Court in *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1003 (4th Cir.1986) noted that Section 105(a) authorizes the Bankruptcy Court to enjoin a variety of proceedings, including discovery against the debtor or its officers and employees, which will have an adverse impact on the debtor's ability to formulate a Chapter 11 Plan. The Court of Appeals for the Second Circuit has further said,

"And in our view, if the bankruptcy court may ever use its equitable powers under section 105(a) to enjoin actions pursued in other courts as 'concerning the administration of the estate' under section 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action."

*In re Johns-Manville Corp.,* supra, 801 F.2d at 64; and,

"Even if it should ultimately be determined that the automatic stay under section 362 does not apply to Paine Webber's third-party complaint, the Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings."

*In re Baldwin-United Corp. Litigation,* 765 F.2d 343, 348 (2d Cir.1985).

A debtor's management, confronting liability for underfunding Pension Plans and responsible for formulating a reorganization plan, faces the temptation of persuading the Bankruptcy Court to employ Section 105(a), absolving it temporarily of liability under the guise of protecting the reorganization, which management intends to use to absolve itself permanently of lia-

bility at some unknown time. A debtor seeking relief which LTV has obtained must submit more than conclusory proof that lawsuits against management will divert management's time and resources away from the reorganization. Not one defendant in the Farragher suit offered testimony about his specific responsibilities concerning the formulation of a reorganization plan or other evidence tending to demonstrate management's good faith, so as to support the wisdom of LTV's assertion that all of it and its management-fiduciaries' Pension Plan problems should be addressed in one forum.

Undeniably, Walter Meyer, Senior Vice-President of Personnel and the debtor's Pension Plan Administrator, who submitted an Affidavit, believes that,

> "LTV's successful reorganization is dependent upon its ability in a single forum, to restructure its billions of dollars of pension liabilities so that those entitled to benefits, and other creditors, will be treated fairly, and LTV can return to a profitable operation. Allowing lawsuits with respect to pension and employee benefit matters to proceed outside the reorganization court is inimical to this goal."

Meyer Affidavit paragraph 14. He adds, in paragraph 17, a declaration that LTV's personnel would not be able to tend simultaneously to the Farragher suit, the bankruptcy, and their management responsibilities. Unlike Meyer, Justin Karl, the debtor's Associate General Counsel, who testified on LTV's behalf, is not a defendant in the Farragher suit. He apportioned 40–85 percent of his 10 attorney staff's time to the reorganization. According to Karl, Farragher defendant Hay, LTV's Board Chairman, is responsible for the overall plan of reorganization and Farragher defendant, Paulos, will testify about the shutdown of the Gadsden Mill. Karl also identified other personnel and stated their functions in the course of questioning about their entitlement to indemnification under the LTV by-laws. The questions were propounded from an exhibit, attached to Meyer's Affidavit, which listed the defendants in the Farragher suit. What they had accomplished in pursuant of reorganization since the petition filing in July, 1986 was not revealed at the hearing held on January 23, 1987. Through trust agreements, LTV is also obligated to indemnify the Chase Manhattan Bank and the Mellon Bank, defendants in the Farragher suit. Karl anticipated that the litigation would be handled by the in-house litigators, distracting them from liquidating LTV's outstanding claims and suits and resulting in various expenses, including the cost of retaining local counsel. Congress has implicitly recognized, however, that litigation expenses alone do not justify a stay of a proceeding. *E.E. O.C. v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986).

Section 105(a) authorizes the Bankruptcy Court to issue any order that is necessary or appropriate to carry out the provisions of Title 11. From the words "necessary or appropriate" the Court perceives a Congressional intent authorizing extraordinary relief upon the standard employed by Courts in determining an application for a preliminary injunction, *see Matter of Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1188 (5th Cir.1986), which is the relief LTV sought through the adversary proceedings. In light of this standard and in the face of circumstances pregnant with the potential for bad faith present here, in order to demonstrate irreparable harm, the debtor must present more than conclusory statements evidencing the possibility of a threat to the likelihood of a successful reorganization. The evidence thus far presented appears to fall short of the necessary burden.

The only findings relating primarily to the welfare of the debtor, rather than the welfare of its management, concern the issues of indemnification and collateral estoppel. In these contexts, the Court must assess the Farragher assertion that their suit does not involve LTV or its assets in light of the debtor's obligations and liabilities.

Referring to issuance of a stay against third-parties pursuant to 11 U.S.C. Section 362(a)(1), the Court in *A.H. Robins Co.*,

*Inc., supra,* 788 F.2d at 999 (emphasis added) observed,

> "This 'unusual situation,' it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to *absolute* indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute."

The relevant indemnity provisions, copies of which accompany Meyer's Affidavit, Appendix Exhs. 24 I & J, confirm witness Karl's testimony that,

> "Q. So it's speculation on your part as to whether or not they would be entitled to indemnity, is that correct?
>
> A. I think that's right."

Tr. January 23, 1987 at 171 (Appendix Exh. 23). As the Farragher action approaches finality, the Court can envision circumstances in which indemnification may threaten the debtor's bonafide and demonstrated efforts to reorganize. That point has not yet been reached in this record.

Additionally, Section 362(a)(1) speaks in terms of staying the "commencement or *continuation*" of lawsuits. Its potential for application against third-parties derives from the "necessary or appropriate" language of Section 105(a). The Bankruptcy Court was understandably concerned because of the inadequacy of the debtor's indemnification insurance; however, the Court apparently did not weigh the option of staying the continuation of the suit at some later time, or possibly staying litigation by Farragher defendants to enforce the debtor's indemnification obligations. On the one hand LTV proclaims the necessity of having Pension Plan matters addressed "globally" in one forum, yet it will not concede that upon appropriate application, the Bankruptcy Court may determine possible indemnification issues.

Within the context of collateral estoppel, the record discloses that the "unusual situation" referred to in *A.H. Robins Co., Inc., supra,* has arisen here. As the Plan Administrator, LTV is a co-fiduciary of the Farragher defendants under 29 U.S.C. Section 1002(21)(A)(iii). 29 U.S.C. Section 1105(a), attaches liability for the acts of a cofiduciary under ERISA as follows:

> "In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

As LTV officials authorized to act on behalf of the corporation and Pension Plan trustees, several of the Farragher defendants wore "two hats." *Amato v. Western Union International, Inc.,* 773 F.2d 1402, 1416–17 (2d Cir.1985), a situation contemplated by Congress in 29 U.S.C. Section 1108(c)(3).

> "Although officers of a corporation who are trustees of its pension plan do not violate their duties as trustees by taking action which, after careful and impartial investigation, they reasonably conclude best to promote the interests of participants and beneficiaries simply because it incidentally benefits the corporation or, indeed, themselves, their decisions must be made with an eye single to the interests of the participants and beneficiaries. Restatememnt of Trusts 2d § 170 (1959);

II Scott on Trusts § 170, at 1297–99 (1967) (citing cases and authorities); Bogert, The Law of Trusts and Trustees § 543 (2d ed. 1978). This, in turn, imposes a duty on the trustees to avoid placing themselves in a position where their acts as officers or directors of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan."

*Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir.)., *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). In the event that the duty owed to the Corporation and/or its shareholders in a given situation conflicts with the duty owed to the Pension Plan participants, an individual may have to resign one position to prevent having to serve two masters. *See McMahon v. McDowell,* 794 F.2d 100, 110 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986); *Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1468–69 (5th Cir.1986) (discussion therein). Absent the appropriate and timely resignation, when a fiduciary's actions taken in connection with the performance of his duties as Trustee or Administrator are in his own interest as well, the Court will rigorously scrutinize the conduct. *See Cunha v. Ward Foods, Inc.,* 804 F.2d 1418, 1432 (9th Cir.1986).

The potential for conflict of interest virtually inheres in a Pension Plan where the financially ailing Sponsor/Administrator is co-fiduciary with certain of its officers and directors. Moreover, until the Farragher defendants wearing two hats remove one of the hats, their acts render the co-fiduciary debtor liable for contribution through Section 1105(a). *See Alton Memorial Hospital v. Metropolitan Life Ins. Co.,* 656 F.2d 245, 250 (7th Cir.1981); *cf. Sutton v. Weirton Steel, etc.,* 724 F.2d 406, 410 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984). ("ERISA's requirements 'insulate the trust from the employer's interest,' and, consequently, [LTV and its agents were] not permitted to assume a position where [they] had 'dual loyalties' in the administration of the plan."). As a result, a judgment against the LTV related defendants upon the allegations of claim 2 of the Farragher complaint will, in effect, be a judgment or finding against LTV, and accordingly, that portion of the suit should be enjoined from going forward.

The Court's analysis of the merits of the Farragher appeal emphasizes equity's preference for individual determinations tailored to specific circumstances over the blanket relief granted by the Bankruptcy Court. While appellants Miller and Shaffer have reiterated many of the Farragher points, they fail to explain why their appeal is not moot. Their complaint in the Western District of Pennsylvania sought only to enjoin the Jones & Laughlin Retirement Plan from attempting to terminate under 29 U.S.C. Section 1341(c). A consent Order entered in the Southern District of New York terminated the Plan and appointed the PBGC as Trustee, and, therefore, mooted the lawsuit in Pennsylvania. In the course of their brief, Miller & Shaffer assume that they have been enjoined from pursuing unidentified claims against the PBGC and other solvent sponsors of the Plan. They also maintain that these lawsuits would have no impact on LTV because, pursuant to the consent Order, LTV should have forwarded all papers to the PBGC, which now bears the burden of any defense. Moreover, such a suit, for example by Shaffer against his former employer, Aliquippa & Southern Railroad, might result in reducing LTV's liability. From the listed exceptions, the Court comprehends the Bankruptcy Court's Order as having intended to discourage third-party actions which were in reality lawsuits against LTV. Viewed in this light, the Order becomes a form of preemptive warning, the effect of which cannot be determined until the lawsuit(s) are actually filed. At that time, the allegations of the complaint(s) will permit an identification of the ultimate target, as has been done in the Farragher appeal. Consequently, while clarifying the purpose of the Bankruptcy Court's Order, which clarification has also been achieved through the Farragher ap-

peal, the Miller & Shaffer appeal is otherwise moot.

The remaining appeals do not arise from adversary proceedings. The argument of the USWA focuses upon the application of the Bankruptcy Court's Order to post-petition conduct of LTV. Under 28 U.S.C. Section 959(a), USWA does not require leave of the Bankruptcy Court to sue LTV for such conduct; however, USWA concedes that the statute gives the Bankruptcy Court equitable power over such a lawsuit consonant with 11 U.S.C. Section 105. Unfortunately, the *in rem* nature of the Bankruptcy Court's Order does not distinguish between Pension Plan related lawsuits covered by the automatic stay and Pension Plan related lawsuits which may be subject to injunction only after the filing. *See In re Continental Air Lines, Inc.*, 61 B.R. 758, 781 (S.D.Tex.1986). The Bankruptcy Court's *in rem* power extends to the estate of the debtor and not thereby to any and every matter which may touch/affect Pension Plans related to or associated with the debtor. Cf. *United States v. Crookshanks*, 441 F.Supp. 268, 270 (D.Or.1977). ("An example of the *in rem* jurisdiction of the federal courts is that of bankruptcy, in which the ability of nonparty creditors to enforce their rights is restricted. The *res* in bankruptcy is the estate of the bankrupt.") In the instant case, it would appear that the Order prematurely declares that lawsuits based upon post-petition conduct of LTV will be enjoined. The Order should be modified to be consistent with the statutory scheme.

Along with the other parties, PBGC disputes the sufficiency of the legal and factual underpinnings of both the employee litigation and Pension Plan Orders. At the present time, the PBGC's ability to influence LTV's reorganization through the powers and responsibilities granted in ERISA is latent. The evidence presented by LTV suggests, at best, that PBGC may take any of several courses, including acting with discretion to protect the taxpayer's interests in a difficult situation. Allowing the Bankruptcy Court's Order to stand would suggest legislative intent permitting possible wrongdoers to escape responding for their actions by hiding behind a Corporation's reorganization. Case law requires that the Bankruptcy Court further analyze the evidence so as to determine that LTV's efforts to address the Pension Plan problems, and thus its interest in reorganization, outweigh the interests of Pension Plan participants and the PBGC. *E.g. Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1199 (6th Cir.1983); *In re Continental Air Lines, Inc., supra*, 61 B.R. at 782. It would appear that the Bankruptcy Court's Order subordinates the substantial governmental interest in the enforcement of ERISA and the protections it provides for Pension Plan participants to the debtor's purely subjective perceptions. In an analogous context concerning the separate liability of a solvent individual responsible for trust fund taxes pursuant to 26 U.S.C. Section 6672, the Court in *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549 (11th Cir.1986) (per curiam) ruled,

"The jurisdiction of the bankruptcy courts encompasses determinations of the tax liabilities of debtors who file petitions for relief under the bankruptcy laws. It does not, however, extend to the separate liabilities of taxpayers who are not debtors under the Bankruptcy Code. It is therefore irrelevant that the penalty, if assessed, will adversely affect the corporate debtor's reorganization. Accordingly, we conclude that the separate tax liabilities of the Huckabees were outside the scope of the bankruptcy court's jurisdiction."

Similarly, the separate fiduciary liabilities of LTV's directors/employees are also outside the scope of the Bankruptcy Court's jurisdiction. To be sure, as the reorganization proceedings unfold, a confluence of circumstances so overwhelming or threatening to the debtor or its assets, along with equities favoring the debtor, may arise so as to justify broad *in rem* relief. As stated previously, however, that point has not been arrived at.

Based on the foregoing, the employee litigation and Pension Plan Orders are vacated and the matter is remanded for entry of injunctive relief consistent with this

**953**

opinion. Additionally, this Court's Order is stayed for ten (10) days to permit LTV to seek a stay from the Court of Appeals and further, to permit the parties to pursue an expedited appeal.