Chief Justice Roberts,
with whom Justice Thomas, Justice Ginsburg, and Justice Sotomayor join, concurring in the judgment in part and dissenting in part.
The Court correctly rejects the Special Master’s formulation of a new test for intervention in original actions, and correctly denies the city of Charlotte leave to intervene. The majority goes on, however, to misapply our established test in granting intervention to Duke Energy Carolinas, LLC (Duke Energy), and the Catawba River Water Supply-Project (CRWSP).
*277 The result is literally unprecedented: Even though equitable apportionment actions are a significant part of our original docket, this Court has never before granted intervention in such a case to an entity other than a State, the United States, or an Indian tribe. Never. That is because the apportionment of an interstate waterway is a sovereign dispute, and the key to intervention in such an action is just that — sovereignty. The Court’s decision to permit nonsovereigns to intervene in this case has the potential to alter in a fundamental way the nature of our original jurisdiction, transforming it from a means of resolving high disputes between sovereigns into a forum for airing private interests. Given the importance of maintaining the proper limits on that jurisdiction, I respectfully dissent.
I
Two basic principles have guided the exercise of our constitutionally conferred original jurisdiction. The first is an appreciation that our original jurisdiction, “delicate and grave,” Louisiana v. Texas, 176 U. S. 1, 15 (1900), was granted to provide a forum for the peaceful resolution of weighty controversies involving the States. “The model case for invocation of this Court’s original jurisdiction is a dispute between States of such seriousness that it would amount to casus belli if the States were fully sovereign.” Texas v. New Mexico, 462 U. S. 554, 571, n. 18 (1983). In determining whether to exercise original jurisdiction, we accordingly focus on “the nature of the interest of the complaining State,” and in particular the “seriousness and dignity” of the claim asserted. Mississippi v. Louisiana, 506 U. S. 73, 77 (1992) (internal quotation marks omitted).
Original jurisdiction is for the resolution of state claims, not private claims. To invoke that jurisdiction, a State “must, of course, represent an interest of her own and not merely that of her citizens or corporations.” Arkansas v. Texas, 346 U. S. 368, 370 (1953); see Kansas v. Colorado, 533 *278 U. S. 1, 8-9 (2001); Pennsylvania v. New Jersey, 426 U. S. 660, 665 (1976) (per curiam) (It is “settled doctrine that a State has standing to sue only when its sovereign or quasi-sovereign interests are implicated and it is not merely litigating as a volunteer the personal claims of its citizens”). And in deciding whether a State meets that requirement, this Court considers whether the State is “in full control of [the] litigation.” Kansas v. Colorado, supra, at 8.
The second guiding principle is a practical one: We are not well suited to assume the role of a trial judge. See Ohio v. Wyandotte Chemicals Corp., 401 U. S. 493, 498 (1971). We have attempted to address that reality by relying on the services of able special masters, who have become vitally important in allowing us to manage our original docket. But the responsibility for the exercise of this Court’s original jurisdiction remains Ours alone under the Constitution.
These two considerations — that our original jurisdiction is limited to high claims affecting state sovereignty, and that practical realities limit our ability to act as a trial court— converge in our standard for intervention in original actions. We articulated that standard in New Jersey v. New York, 345 U. S. 369, 373 (1953) (per curiam). There, we denied the city of Philadelphia’s motion for leave to intervene in an action, to which the Commonwealth of Pennsylvania was already a party, involving the apportionment of the Delaware River. Id., at 373-374. We set out the following test for intervention in an original action: “An intervenor whose state is already a party should have the burden of showing some compelling interest in his own right, apart from his interest in a class with all other citizens and creatures of the state, which interest is not properly represented by the state.” Id., at 373.
This exacting standard is grounded on a “necessary recognition of sovereign dignity,” ibid., under which “the state, when a party to a suit involving a matter of sovereign interest, ‘must be deemed to represent all its citizens,’” id., at *279 372-373 (quoting Kentucky v. Indiana, 281 U. S. 163, 173-174 (1930)). In applying that doctrine to motions to intervene, the New Jersey v. New York test precludes a State from being “judicially impeached on matters of policy by its own subjects,” and prevents the use of the Court’s original jurisdiction to air “intramural disputéis]” that should be settled in a different forum — namely, within the States. 345 U. S., at 373.
The New Jersey v. New York test is also “a working rule for good judicial administration.” Ibid. Without it, “there would be no practical limitation on the number of citizens, as such, who would be entitled to be made parties.” Ibid. Indeed, the Court observed that allowing Philadelphia to intervene would have made it difficult to refuse attempts to intervene by other users of water from the Delaware River, including other cities, and even “[l]arge industrial plants.” Ibid. The New Jersey v. New York test, properly applied, provides a much-needed limiting principle that prevents the expansion of our original proceedings “to the dimensions of ordinary class actions,” ibid., or “town-meeting lawsuits,” id., at 376 (Jackson, J., dissenting). See also Ohio v. Wyandotte Chemicals Corp., supra, at 504; Utah v. United States, 394 U. S. 89, 95-96 (1969) (per curiam).

II

Applying these principles, this Court has never granted a nonsovereign entity’s motion to intervene in an equitable apportionment action. The reason is straightforward: An interest in water is an interest shared with other citizens, and is properly pressed or defended by the State. And a private entity’s interest in its particular share of the State’s water, once the water is allocated between the States, is an “intramural dispute” to be decided by each State on its own. New Jersey v. New York, supra, at 373.
The interests of a State’s citizens in the use of water derive entirely from the State’s sovereign interest in the wa *280 terway. If the State has no claim to the waters of an interstate river, then its citizens have none either. See Hinderlider v. La Plata River & Cherry Creek Ditch Co., 304 U. S. 92, 102 (1938). We have long recognized, therefore, that the State must be deemed to represent its citizens’ interests in an equitable apportionment action. See United States v. Nevada, 412 U. S. 534, 539 (1973) (per curiam) (“For the purposes of dividing the waters of an interstate stream with another State, [a State] has the right, parens patriae, to represent all the nonfederal users in its own State insofar as the share allocated to the other State is concerned”). Precisely because the State represents all its citizens in an equitable apportionment action, these citizens have no claim themselves against the other State. They are instead “bound by the result reached through representation by their respective States,” regardless of whether those citizens are parties to the suit. Nebraska v. Wyoming, 515 U. S. 1, 22 (1995).
This basic principle applies without regard to whether the State agrees with and will advance the particular interest asserted by a specific private entity. The State “ ‘must be deemed to represent all its citizens,’” New Jersey v. New York, supra, at 372-373 (quoting Kentucky v. Indiana, supra, at 173-174; emphasis added), not just those who subscribe to the State’s position before this Court. The directive that a State cannot be “judicially impeached on matters of policy by its own subjects,” New Jersey v. New York, supra, at 373, obviously applies to the case in which a subject disagrees with the position of the State.
A State’s citizens also need not be made parties to an equitable apportionment action because the Court’s judgment in such an action does not determine the water rights of any individual citizen. We made that clear long ago in two decisions arising from the same dispute, Wyoming v. Colorado, 298 U. S. 573 (1936), and Wyoming v. Colorado, 309 U. S. 572 *281 (1940). In those cases, Wyoming sought to enforce this Court’s earlier decree apportioning the Laramie River. See Wyoming v. Colorado, 260 U. S. 1 (1922). We held that the decree controlled the allocation of water between Wyoming and Colorado, not within them. As we recognized, our decision apportioning the river did not “withdraw water claims dealt with therein from the operation of local laws relating to their transfer or ... restrict their utilization in ways not affecting the rights of one State and her claimants as against the other State and her claimants.” 298 U. S., at 584. Thus, although the decree referred to particular uses of water in Colorado, we held that those individual uses could vary from the terms set out in the decree, so long as the total diversion of water in Colorado was no greater than the decree allowed. See id., at 584-585; 309 U. S., at 579-581. We reiterated the point in Nebraska v. Wyoming, 325 U. S. 589, 627 (1945), observing that the apportionment of a waterway between the States has only an “indirect effect” on the rights of individuals within the States.
All this explains our long history of rejecting attempts by nonsovereign entities to intervene in equitable apportionment actions. New Jersey v. New York was itself an equitable apportionment suit, and we denied intervention in that case. We have also summarily denied motions to intervene in other water disputes between the States. See Arizona v. California, 514 U. S. 1081 (1995); Arizona v. California, 345 U. S. 914 (1953); Nebraska v. Wyoming, 296 U. S. 548 (1935); Wisconsin v. Illinois, 279 U. S. 821 (1929). And we have strongly intimated in other decisions (albeit in dictum) that private entities can rarely, if ever, intervene in original actions involving the apportionment of interstate waterways. See United States v. Nevada, supra, at 538 (“individual users of water . . . ordinarily would have no right to intervene in an original action in this Court”); Nebraska v. Wyoming, 515 U. S., at 22 (“We have said on many occa *282 sions that water disputes among States may be resolved by compact or decree without the participation of individual claimants”).[1]
The majority contends that the result in this case is not a “new development,” and that its holding is supported by “nearly 90 years” of precedent. Ante, at 264. But in support of those statements, the majority cites only four decisions in which the Court has granted a motion to intervene in an original suit — and of course none in which this Court granted the motion of a nonsovereign entity to intervene in an equitable apportionment action. The cases the majority cites demonstrate what constitutes a “compelling interest in [the intervenor’s] own right, apart from his interest in a class with all other citizens and creatures of the state.” New Jersey v. New York, 345 U. S., at 873. But the intervenor interests in those cases were quite different from the general shared interest in water at issue here.
Take Arizona v. California, 460 U. S. 605 (1983). There we allowed several Indian Tribes to intervene in a water dispute. Id., at 615. As the Court in that case made clear, however, the Indian Tribes were allowed to intervene because they were sovereign entities. Ibid. The Court distinguished New Jersey v. New York on that very ground. See 460 U. S., at 615, n. 5.
*283 The other cases relied upon by the majority are even farther afield. See Maryland v. Louisiana, 451 U. S. 725 (1981); Texas v. Louisiana, 426 U. S. 465 (1976) (per curiam); Oklahoma v. Texas, 258 U. S. 574 (1922). None was an equitable apportionment action. Two involved boundary disputes in which the Court allowed nonsovereign intervenors to claim title to certain parcels of property. See Texas v. Louisiana, supra, at 466 (permitting intervention by the city of Port Arthur, Texas); Oklahoma v. Texas, supra, at 580-581 (same for private parties). A claim to title in a particular piece of property is quite different from a general interest shared by all citizens in the State’s waters. And it would be particularly inapt to draw general conclusions about intervention from Oklahoma v. Texas, in which the Court took the southern half of the Red River into receivership. See 258 U. S., at 580. In subsequently allowing persons to intervene to assert claims to the subject property, the Court relied explicitly on the fact that the receiver had possession and control of the claimed parcels, and “no other court lawfully [could] interfere with or disturb that possession or control.” Id., at 581.
The majority’s reliance on Maryland v. Louisiana is equally unavailing. There, several States challenged the constitutionality of Louisiana’s application of a tax on natural gas that was brought into that State. 451 U. S., at 728. In two sentences within a long footnote, the Court mentioned that it was permitting a group of pipeline companies to intervene and challenge the tax. Id., at 745, n. 21. The Court made clear that the pipeline companies were able to intervene in light of the particular circumstances in that case— namely, Louisiana’s tax was “directly imposed on the owner of imported gas,” and “the pipelines most often own[ed] the gas.” Ibid. Again, an interest in a tax imposed only on discrete parties is obviously different from a general interest shared by all citizens of the State.
*284 III
Charlotte, Duke Energy, and CRWSP claim a variety of specific needs for water to justify their intervention. But all those particular needs derive from an interest in the water of the Catawba River. That interest is not exclusive, but is instead shared “with all other citizens and creatures of the state.” New Jersey v. New York, 345 U. S., at 373. The State’s “citizens and creatures” certainly put the Catawba’s water and flow to different uses — many for drinking water, some for farming or recreation, others for generating power. That does not, however, make their interest in the water itself unique. And it is the respective interests of the States in the water itself that are being litigated in this original action — not the claims of particular citizens that they be allowed to put the water to specified uses. The latter subject is “an intramural dispute over the distribution of water within the [State],” ibid., and is not the subject of this original proceeding.
The majority recognizes as much with respect to Charlotte, ante, at 274-276, but departs from these principles in granting intervention to Duke Energy and CRWSP. The majority’s reasons for doing so do not withstand scrutiny.
The majority initially contends that Duke Energy should be allowed to intervene because it possesses “relevant information” that we are “likely to consider.” Ante, at 272, 273. Nonparties often do, but that is not a “compelling interest” justifying intervention. I have little doubt that Philadelphia possessed pertinent information in New Jersey v. New York, but we did not permit Philadelphia to intervene on that ground. Parties to litigation have ready means of access to relevant information held by nonparties, and those nonparties can certainly furnish such information on their own if they consider it in their best interests (through, for example, participation as amici curiae).
The majority also states that Duke Energy has compelling interests in its hydroelectric operations along the river, and *285 in “the amount of water that Duke Energy needs to sustain its operations and provide electricity to the region.” Ante, at 272. These are simply interests in a particular use of water or its flow. Even if Duke Energy uses water for particularly important purposes, its interests are no different in kind from the interests of any other entity that relies on water for its commercial operations.
Finally, the majority asserts that Duke Energy “has a unique and compelling interest in protecting the terms of its existing [Federal Energy Regulatory Commission (FERC)] license and the [Comprehensive Relicensing Agreement (CRA)] that forms the basis of Duke Energy’s pending renewal application.” Ante, at 272-273. And the majority contends that neither State represents these interests because “[n]either State has signed the CRA or expressed an intention to defend its terms,” and because North Carolina has even expressed its intent to challenge the terms of the CRA in this action. Ante, at 273.
Again, all this amounts to is an articulation of the reason Duke Energy asserts a particular interest in the waters of the Catawba. Other citizens of North Carolina doubtless have reasons of their own, ones they find as important as Duke Energy believes its to be. Weighing those interests is an “intramural” matter for the State. New Jersey v. New York, supra, at 373. In addition, the Federal Government is doubtless familiar with the pending FERC proceedings, and it sees no corresponding need for us to grant Duke Energy’s motion to intervene. See Brief for United States as Amicus Curiae 20, n. 3.
As for CRWSP, the Special Master concluded that it should be allowed to intervene, but only because its position was “similar analytically to Charlotte’s.” First Interim Report of Special Master, O. T. 2008, No. 138, Orig., p. 25. The Court rejects Charlotte’s motion, but nonetheless allows CRWSP to intervene on a ground not relied upon by the Special Master. According to the majority, CRWSP should *286 be allowed to intervene because, as a bistate entity, its full range of interests cannot be represented entirely by either North or South Carolina. See ante, at 268-271.
CRWSP’s motion arguably presents a different case from that of Duke Energy, one not definitively resolved by this Court in New Jersey v. New York. At the end of the day, however, I agree with the Special Master’s premise— CRWSP’s position is really no different from Charlotte’s. I disagree with her conclusion, of course, because I agree with the Court that Charlotte should not be allowed to intervene.
A bistate entity cannot be allowed to intervene merely because it embodies an “intermingling of state interests.” Ante, at 271, n. 6. The same would be true of any bistate entity, or indeed any corporation or individual conducting business in both States. An exception for such cases would certainly swallow the New Jersey v. New York rule. Entities with interests in both States must seek to vindicate those interests within each State. Bistate entities are not States entitled to invoke our original jurisdiction, and should not be effectively accorded an automatic right to intervene as parties in cases within that jurisdiction.
With respect to both Duke Energy and CRWSP, the majority further relies on its conclusion that the States will not “properly represent” the interests of those entities. Ante, at 270; see ante, at 273. If by that the Court means that the States may adopt positions adverse to Duke Energy and CRWSP, that surely cannot be enough. The guiding principle articulated in New Jersey v. New York is “that the state, when a party to a suit involving a matter of sovereign interest, ‘must be deemed to represent all its citizens,’ ” and may not be “judicially impeached on matters of policy by its own subjects.” 345 U. S., at 372-373 (quoting Kentucky v. Indiana, 281 U. S., at 173-174). This case involves a “matter of sovereign interest” — the equitable apportionment of water— and the States therefore “properly represent] ” the shared *287 interests in water of “all” their citizens, including Duke Energy and CRWSP. 345 U. S., at 372-373. An interest is “not properly represented” by a State, id., at 373, when it is not a sovereign interest but instead a parochial one, such as the interests held to justify intervention in the cases on which the majority relies. See supra, at 283.
The majority also pays little heed to the practical constraints on this Court’s original jurisdiction. It is hard to see how the arguments the Court accepts today could not also be pressed by countless other water users in either North or South Carolina. Under the Court’s analysis, I see “no practical limitation on the number of citizens, as such, who would be entitled to be made parties.” New Jersey v. New York, supra, at 373. To the extent intervention is allowed for some private entities with interests in the water, others who also have an interest will feel compelled to intervene as well — and we will be hard put to refuse them. See Utah v. United States, 394 U. S., at 95-96 (denying intervention to a corporation that sought to quiet its title to land because, “[i]f [it were] admitted, fairness would require the admission of any of the other 120 private landowners who wish to quiet their title ..., greatly increasing the complexity of this litigation”). An equitable apportionment action will take on the characteristics of an interpleader case, with all those asserting interests in the limited supply of water jostling for their share like animals at a waterhole. And we will find ourselves in a “quandary whereby we must opt either to pick and choose arbitrarily among similarly situated litigants or to devote truly enormous portions of our energies to [original] matters.” Ohio v. Wyandotte Chemicals Corp., 401 U. S., at 504.
Allowing nonsovereign entities to intervene as parties will inevitably prolong the resolution of this and other equitable apportionment actions, which already take considerable time. Intervenors do not come alone — they bring along more issues to decide, more discovery requests, more excep *288 tions to the recommendations of the Special Master. In particular, intervention makes settling a case more difficult, as a private intervenor has the right to object to a settlement agreement between the States, if not the power to block a settlement altogether. Cf. Firefighters v. Cleveland, 478 U. S. 501, 529 (1986).
And all this for what? The Special Master, and through her the Court, can have the benefit of the views of those seeking to intervene by according them the status of amici curiae. “Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.” Bush v. Viterna, 740 F. 2d 350, 359 (CA5 1984) (per curiam) (internal quotation marks omitted). Courts often treat amicus participation as an alternative to intervention. See 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1913, p. 495, and n. 26 (2007) (citing examples). And this Court often denies motions to intervene while granting leave to participate as an amicus in original actions generally, see, e. g., Kentucky v. Indiana, 445 U. S. 941 (1980); United States v. California, 377 U. S. 926 (1964); cf. New Hampshire v. Maine, 426 U. S. 363, 365, n. 2 (1976), and in equitable apportionment actions specifically, see, e. g., Arizona v. California, 530 U. S. 392, 419, n. 6 (2000); Nebraska v. Wyoming, 507 U. S. 584, 589-590 (1993).
Nebraska v. Wyoming is particularly instructive on this point. The Court there adopted the recommendation of the Special Master to deny intervention to certain entities. See id., at 589-590; Second Interim Report of Special Master, O. T. 1991, No. 108, Orig., pp. 108-109. The interests of those entities in the water dispute were quite similar to the interests of the entities seeking to intervene here: One operated a powerplant and a reservoir on the Laramie River, and another was a power district seeking to protect its FERC license. See First Interim Report of Special Master, O. T. 1988, No. 108, Orig., pp. 11-14,9a. While it adopted the Spe *289 cial Master’s recommendation to deny intervention, the Court nonetheless permitted those entities to participate as amici. See 507 U. S., at 589-590; Nebraska v. Wyoming, 502 U. S. 1055 (1992).[2] The majority does not explain why that familiar and customary approach might be inadequate in this case.
* * *
Our original jurisdiction over actions between States is concerned with disputes so serious that they would be grounds for war if the States were truly sovereign. Texas v. New Mexico, 462 U. S., at 571, n. 18. A dispute between States over rights to water fits that bill; a squabble among private entities within a State over how to divvy up that State’s share does not. A judgment in an equitable apportionment action binds the States; it is not binding with respect to particular uses asserted by private entities. Allowing intervention by such entities would vastly complicate and delay already complicated and lengthy actions. And the benefits private entities might bring can be readily secured, as has typically been done, by their participation as amici curiae.
In light of all this, it is difficult to understand why the Court grants nonsovereign entities leave to intervene in this equitable apportionment action, and easy to understand why the Court has never before done so in such a case.
I would grant South Carolina’s exceptions, and deny the motions to intervene.

 The majority contends that this dissent reads our precedents to establish “a rule against nonstate intervention” in equitable apportionment actions. Ante, at 265, n. 3. The number of nonsovereigns that the Court should permit to intervene in water disputes is small — indeed, it was zero until today. But that does not mean that a private entity could not satisfy the New Jersey v. New York test by, for example, asserting water-use rights that are not dependent upon the rights of state parties. A private party (or perhaps a Compact Clause entity) with a federal statutory right to a certain quantity of water might have a compelling interest in an equitable apportionment action that is not fairly represented by the States. The putative intervenors in this case, however, do not hold rights of this sort.

 No party filed exceptions to the Special Master’s recommendation to deny intervention in Nebraska v. Wyoming. The Special Master later allowed one of the entities, Basin Electric Power Cooperative, to intervene as a party based on changed circumstances. See Addendum to Reply Brief for Duke Energy 2-5. That decision was never reviewed by the Court.